SECOND DIVISION
June 13, 2006

No. 1-04-3116

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | |
| | ) | |
| TERRY BOYD, | ) | Honorable |
| | ) | Bertina Lampkin, |
| Defendant-Appellant. | ) | Judge Presiding. |

JUSTICE WOLFSON delivered the opinion of the court:

At trial the State used an uncharged crime to combat the defendant's consent defense. That evidence creates one of several issues the defendant raises in this appeal.

Following a jury trial, the defendant was convicted of two counts of aggravated criminal sexual assault, one count of armed robbery, and two counts of aggravated kidnapping. He was sentenced to natural life in prison on the aggravated criminal sexual assault and aggravated kidnapping convictions and to a concurrent term of 30 years on the armed robbery conviction.

The defendant raises the following contentions on appeal: (1) evidence of defendant's other crime was improperly admitted; (2) the victim's testimony about a statement made by the defendant was improperly admitted; (3) the trial court failed to properly instruct the jury, where the jury was denied the option of fully acquitting defendant on both the greater and lesser-included offenses; (4) the trial court's

response to the jury's note misled the jury and coerced the minority jurors, and the court erred in failing to answer the jury's explicit legal question; and (5) this court must vacate one of defendant's aggravated kidnapping convictions and the predicate offense of the remaining aggravated kidnapping conviction. We affirm all but one of the defendant's convictions.

FACTS

Prior to trial, the State filed a motion in limine, seeking to admit the testimony of two women who said the defendant sexually assaulted them. The State sought to introduce the evidence to prove modus operandi, common scheme or design, identity, intent, and absence of an innocent frame of mind. The alleged assaults were not charged in this case. At trial, the defense asserted the affirmative defense of consent. The jury was instructed on consent. The defense argued the only issue for the jury to decide was the credibility of the alleged victim. The trial court denied the motion as to one of the women because the facts were too dissimilar. The court granted the motion as to T.W., saying her testimony would be probative "as to defendant's frame of mind or lack of innocent frame of mind." During the instructions conference, the trial court changed the reason for allowing the evidence. The court ordered the jury to consider the evidence only as it pertained to design. The court did not explain what it meant by "design."

Because the facts of the charged and uncharged offenses are relevant to the defendant's contentions, we set out the evidence in some detail.

At trial, L.M. testified she was working as an insurance agent at an office in Hyde

Park on June 23, 1998. At approximately 11:30 a.m., the defendant entered the office to sell children's books and toys. L.M. did not know the defendant, but looked at the merchandise he was selling. The defendant told her his name was Terry and that he knew L.M.'s friend's brother. L.M. invited the defendant to a meeting for an organization that sold long distance telephone service. She gave him her business card and wrote the time and place for the meeting on the back. L.M. had to leave for a training meeting. The defendant offered her a ride, but she declined. Defendant left the office.

L.M. fell on the sidewalk after leaving her office and went back inside to clean herself off. When she left again, the defendant pulled up in his car and offered her a ride. He told her he had seen her fall, and the two laughed about the incident. L.M. got into defendant's car. The defendant got on the expressway and told L.M. he knew a shortcut. He made a cell phone call. He said he needed to stop to pick up money from a friend. He drove to a neighborhood that was unfamiliar to L.M. He stopped at a house, went into the house, then returned to the car.

The defendant began driving down side streets and drove to an alley. He began shaking his leg and told L.M. he needed to use the bathroom. He got out and went to the back of the car. When he got back in the car, he put a gun in her side and told her it was a stick-up. L.M. asked if he was serious. Defendant said, "This is what I do. This is business." The defendant made her give him her purse and told her to sit on her hands. He told her he would let her go and not hurt her if she didn't make him, but that he didn't care about putting a bullet in her and leaving her in an alley somewhere. He drove to an ATM machine and told L.M. to crawl over him and withdraw money. She

3

tried to withdraw $100, but the machine rejected the transaction because of a $1 transaction fee. She then withdrew $90 and gave it to the defendant. The parties stipulated to the testimony of a bank representative who confirmed the transactions.

The defendant drove to another alley. He checked under her bra and looked down her pants. He told L.M. to turn onto her stomach, climbed on top of her, and put the gun near her head. He tried to perform anal sex, but was unsuccessful. He forced L.M. to perform oral sex on him for five minutes. The defendant then penetrated L.M.'s anus. He told her this is what she got for getting into a car with a stranger, and he would send one of his boys for her if she told anyone. He drove a couple of blocks, returned her purse, ATM card, and bus pass, and pointed her in the direction of the Cicero bus stop.

L.M. took the bus to her work headquarters and arrived at 1:30 p.m. She told the security guard she had been robbed, but did not tell him she had been sexually assaulted. She told him she did not want him to call the police because she was scared for her safety and wanted it to be "over with." She called her mother and her friend. L.M. said she did not tell anyone about the assault because she felt stupid for getting into the car. When she got home, she took a bath. She called the police and told them she was robbed. She did not tell the police she had been sexually assaulted.

The next morning, L.M. told her roommate about the sexual assault. She went with her roommate to the hospital. She went to the police station later that evening and reported the assault. Chicago police officer Ronald Gibbs testified the police set up surveillance at defendant's address and stopped the defendant. Gibbs arrested

4

defendant after he found L.M.'s business card in his wallet.  After informing defendant of his <u>Miranda</u> rights, Gibbs asked defendant about a gun.  The defendant said he had "tossed" the gun.  L.M. identified the locations where the incidents took place and identified the defendant in a line-up.

The parties published photographs to the jury, including photographs from the ATM security camera.  The defense stipulated to the foundation for the photos.  The photos showed L.M. withdrawing money.  L.M. testified some of the photos showed defendant in the driver's seat.  The State conceded that none of the photos showed a gun.

The parties stipulated that Dr. Susan Sipay would testify she examined L.M. on June 24, 1998, using a sexual assault kit.  She did not note any signs of rectal trauma.  The parties stipulated that nurse David Scott would testify he took a history from L.M.  He described her demeanor as cooperative and did not check any boxes on the form indicating L.M. was anxious, crying, defensive, or quiet.  The parties stipulated to the chain of custody of sealed blood vials from defendant and to the sexual assault evidence collection kit.  Karla Cluck, an expert in forensic DNA analysis, testified the DNA profile from a semen stain on L.M.'s underwear matched defendant's DNA profile.

The State then offered evidence of the uncharged offense.  T.W. testified that on June 12, 1998, she was waiting for a bus to go to work.  As she was walking down the street, a car almost hit her.  She yelled at the car.  She and the driver, whom she identified as defendant, started laughing and joking.  She did not know the defendant, but she thought she recognized him from some high school basketball games.  T.W.

accepted defendant's offer of a ride to work. The defendant first dropped off a friend who was in the car. Then defendant said he had to "pee" and began bouncing his leg. T.W. told defendant he could use the bathroom at her office, which was about 50 feet away. Defendant said he could not wait, drove into an alley, parked, and got out of the car. When he returned, he drew a gun and told her it was a robbery. She told him he had to be kidding. He smacked her on the side of the face with the gun. T.W. gave defendant her jewelry, and he took her CD player, cell phone, and wallet.

Defendant told T.W. to turn onto her stomach, and he inserted his penis in her rectum. After he ejaculated, he got back into the driver's seat, told T.W. she was a good girl, and let her out of the car at the end of the alley. She walked to work a half-block away and told her supervisors she had been robbed. She did not tell them about the sexual assault because she was embarrassed. They called the police, and she reported the robbery, but not the assault. When T.W.'s boyfriend came to pick her up, she told him she had been sexually assaulted. He took her to the hospital where she was examined.

The parties stipulated to the chain of custody of the sexual assault evidence collection kit collected from T.W. Karlee Konig, an expert in DNA analysis, testified the DNA profile from rectal swabs taken from T.W. was consistent with defendant's DNA profile. The parties stipulated to the testimony of Chicago police officer Cwick, who would have testified that he interviewed T.W. and filled out a report. In the report, he wrote that T.W. said she was getting a ride from a high school friend, but she didn't know his name. The report indicated the name "Johnson" with a question mark. He

8

also wrote that the address of the occurrence, 5245 W. Lexington, was a street, not an alley. The parties stipulated to the testimony of Chicago police officer Rosen, who would have testified T.W. told him she did not report the sexual assault because "after she had talked to her boyfriend on the phone, she forgot to mention to the reporting officer that she had been raped." T.W. denied making that statement.

The jury convicted defendant of two counts of aggravated criminal sexual assault, one count of armed robbery, one count of aggravated kidnapping predicated on aggravated criminal sexual assault, and one count of aggravated kidnapping predicated on armed robbery.

At sentencing, the State submitted evidence of defendant's prior convictions for rape, aggravated kidnapping, perjury, two burglaries, aggravated possession of a stolen motor vehicle, armed robbery, and robbery. The court sentenced defendant to natural life for each of the aggravated kidnapping and aggravated criminal sexual assault convictions and to a concurrent 30-year prison term for the armed robbery conviction. The defendant's motion for new trial was denied.

DECISION

I. Other Crime Evidence

Defendant contends the trial court improperly admitted T.W.'s testimony as other-crime evidence, where such evidence was not relevant to show design. He also contends the court failed to conduct a prejudice analysis that would have revealed the prejudicial impact of the evidence substantially outweighed any probative value it might have had.

9

The jury received the following instruction, modeled after Illinois Pattern Jury Instruction No. 3.14 (Illinois Pattern Jury Instructions, Criminal, No. 3.14 (4th ed. 2000) (hereinafter IPI Criminal 4th)):

> "Evidence has been received that the defendant has been involved in an offense other than those charged in the indictment. This evidence has been received on the issue of the defendant's design and may be considered by you only for that limited purpose. It is for you to determine whether the defendant was involved in that offense and, if so, what weight should be given to this evidence on the issue of design."

While defense counsel vigorously objected to the admission of other-crime evidence, she did not object to the limiting instruction that referred only to "design." In fact, she proposed it.

Other act evidence is admissible for any relevant purpose, such as modus operandi, intent, identity, motive, or absence of mistake. People v. Illgen, 145 Ill. 2d 353, 364-65, 583 N.E.2d 515 (1991). Pursuant to statute, it is relevant to prove a defendant's propensity to commit certain sexual assault crimes. 725 ILCS 5/115-7.3 (West 1998); People v. Donoho, 204 Ill. 2d 159, 176, 788 N.E.2d 707 (2003). A trial judge must limit evidence of other crimes "to that evidence which is relevant to the purpose for which the other crime is admitted." People v. Bennett, 281 Ill. App. 3d 814, 827, 666 N.E.2d 899 (1996); People v. Miller, 254 Ill. App. 3d 997, 1013, 626 N.E.2d

10

1350 (1993). Evidence is relevant "if it has any tendency to make the existence of a fact that is of consequence in the case more probable or less probable than it would be without the evidence." People v. Bedoya, 325 Ill. App. 3d 926, 937, 758 N.E.2d 366 (2001).

The admissibility of other-crime evidence is a matter within the sound discretion of the trial court, and the court's decision will not be overturned absent a clear abuse of that discretion. Illgen, 145 Ill. 2d at 364.

There is no question the trial court erred in instructing the jury to consider the evidence only as it pertained to design. The State admits design was not at issue in this case. A common design refers to a larger criminal scheme where the charged crime is only a portion. People v. Barbour, 106 Ill. App. 3d 993, 999, 436 N.E.2d 667 (1982). A common design often is relevant to show motive for the crime charged. Barbour, 106 Ill. App. 3d at 1000. There is no evidence the two incidents in this case were part of a larger common scheme.

The State says any error in admitting the evidence for the limited purpose of design was harmless because the jury simply would have ignored the evidence. That is, since design was not at issue, the jury would have disregarded the evidence rather than consider it for any other purpose, as the limiting instruction directs. Seen in that light, the court did the defendant a favor by not allowing the jury to consider the evidence for any purpose other than design.

Where a court erroneously admits other-crime evidence, reversal is not warranted if it is unlikely the error influenced the jury. People v. Hall, 194 Ill. 2d 305,

339, 743 N.E.2d 521 (2000). "Faith in the jury to follow instructions and separate issues is 'the cornerstone of the jury system.' " People v. Luczak, 306 Ill. App. 3d 319, 328, 714 N.E.2d 995 (1999), quoting Illgen, 145 Ill. 2d at 376. We find highly unlikely the State's suggestion that the jury would have ignored the evidence after discounting its use to prove design. But that does not mean the evidence should not have been admitted at all.

The State contends the evidence would have been admissible for purposes of intent or modus operandi, or to prove propensity under section 115-7.3 of the Code of Criminal Procedure of 1963. The State did not offer the evidence under the statute at trial. The statute never was mentioned.

Although the trial court abandoned its original stance that the other-crime evidence was relevant to prove intent, we believe the court was right the first time. In similar cases where the defendant claims the victim consented to the sexual assault, courts have found other-crime evidence relevant to prove defendant's criminal intent or lack of an innocent frame of mind. See Luczak, 306 Ill. App. 3d at 324-25 (other-crime evidence relevant to show defendant's intent was to sexually assault the victim); People v. Harris, 297 Ill. App. 3d 1073, 1086, 697 N.E.2d 850 (1998) (evidence admissible to establish lack of innocent intent where defendant claimed consent); People v. Johnson, 239 Ill. App. 3d 1064, 1074-75, 608 N.E.2d 36 (1992) (evidence allowed to prove defendant's absence of an innocent frame of mind).

Defendant's contention that the issue of intent arises "only when the defendant claims accident" is incorrect. Intent is much broader than simply lack of accident. Intent

is defined, in part, as "the state of mind accompanying an act, esp. a forbidden act. Whereas motive is the inducement to do some act, intent is the mental resolution or determination to do it." Black's Law Dictionary 813 (7th ed. 1999). The Illinois Pattern Jury Instruction on intent states, "[a] person acts with intent to accomplish a result or engage in conduct when his conscious objective or purpose is to accomplish that result or engage in that conduct." IPI Criminal 4th No. 5.01A.

The State contends the evidence also would have been relevant to prove <u>modus operandi</u>. <u>Modus operandi</u> refers to a pattern of criminal behavior so distinctive that separate crimes are recognized as the handiwork of the same wrongdoer. <u>People v. Biggers</u>, 273 Ill. App. 3d 116, 123, 652 N.E.2d 474 (1995).

<u>Modus operandi</u> evidence ordinarily is not relevant where identity is not at issue. <u>People v. Dupree</u>, 339 Ill. App. 3d 512, 520, 793 N.E.2d 31 (2003). Identity is at issue whenever the defendant denies he was the offender. <u>Dupree</u>, 339 Ill. App. 3d at 520. Here, where the defense theory was consent, the identity of the offender was not at issue. <u>Modus operandi</u> would not have been a relevant basis to admit the other crimes evidence.

The State contends the evidence could have been admitted to show the defendant's propensity to commit a criminal sexual assault, pursuant to section 115-7.3 of the Code of Criminal Procedure. Under that section, where a defendant is accused of certain crimes, including aggravated criminal sexual assault, evidence of the defendant's commission of another, separate criminal sexual assault:

"(b) ***may be admissible (if that evidence is otherwise

13

admissible under the rules of evidence) and may be considered for its bearing on any matter to which it is relevant." 725 ILCS 5/115-7.3(a)-(c) (West 1998).

In Donoho, 204 Ill. 2d at 182, the supreme court upheld the constitutionality of the statute. The court held a defendant's propensity to commit the charged crime was a relevant purpose under the statute for admitting other-crime evidence. Donoho, 204 Ill. 2d at 176.

Since design had nothing to do with this case, the prosecution, in its final argument, had difficulty confining its remarks to the sole issue of design contained in IPI Criminal 4th No. 3.14. Referring to the other-crime evidence, the prosecutor, without defense objection, said:

> "The evidence of who the defendant is. His motive, how he operates, how he does business. How he truly is the wolf in sheep's clothing*** That evidence is not to show you that defendant is just a bad guy. That evidence is to demonstrate his design, how he works, how he operates*** Those women took the stand and they were heroes*** They took the stand to tell you what type of man he is. That he is a rapist and he's the worst type of rapist."

We read these remarks as suggesting the evidence could be used to prove the defendant's propensity to commit rape. Although the State did not offer the evidence under the statute, we agree propensity would have been a relevant basis for admitting

the evidence under the statute.  We see no reason why propensity evidence could not be used to meet the defendant's consent defense.

Whether offered for intent or some other purpose, or whether under section 115-7.3, the trial court is required to weigh the probative value of the evidence against the dangers of unfair prejudice, jury confusion, or delay.  Bedoya, 325 Ill. App. 3d at 937; People v. Nunley, 271 Ill. App. 3d 427, 431, 648 N.E.2d 1015 (1995).  When evidence of other crimes is offered, even if relevant, it may be excluded if its unfairly prejudicial effect substantially outweighs its probative value.  Illgen, 145 Ill. 2d at 365.

Section 115-7.3 requires a trial court to conduct a similar weighing test and sets out three factors the court may consider when weighing probative value against "undue prejudice" to the defendant: (1) the proximity in time to the charged offense, (2) the degree of factual similarity between the offenses, and (3) other relevant facts and circumstances.  725 ILCS 5/115-7.3(c) (West 1998).

Where evidence of prior bad acts is used to prove modus operandi or a common design, there must be a high degree of identity between the facts of the two crimes. Illgen, 145 Ill. 2d at 372-73.  When offered for some other purpose, such as intent, mere general areas of similarity will suffice.  Illgen, 145 Ill. 2d at 373.  As factual similarities increase, so does the relevance, or probative value, of the other-crime evidence. Donoho, 204 Ill. 2d at 184.

The two offenses in this case share a number of similar and distinctive details. Among others, the defendant struck up a conversation with each victim, offered to drive the victim to work, picked her up in his car, drove into an alley, began shaking his leg

15

1-04-3116

and told the victim he had to use the bathroom, exited the car, used a gun to rob the victim, told the victim to lie on her stomach, and anally assaulted the victim. Defendant's attempt to distinguish the two offenses by identifying minor differences is unavailing. The identifying characteristics in the two cases go beyond general similarity and approach the level of trademark.

The proximity in time between the two offenses also weighs in favor of probative value because the two incidents took place 11 days apart.

Looking at the other side of the scale, "unfair prejudice" "speaks to the capacity of some concededly relevant evidence to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged." Old Chief v. United States, 519 U.S. 172, 180, 136 L. Ed. 2d 574, 588, 117 S. Ct. 644, 651 (1997). Other-crime evidence, though relevant, must not become a focal point of the trial. People v. Boand, 362 Ill. App. 3d 106, 125, 838 N.E.2d 367 (2005). Courts have warned against the dangers of putting on a "trial within a trial," with detail and repetition greatly exceeding what is necessary to establish the particular purpose for the evidence. People v. Bartall, 98 Ill. 2d 294, 315, 456 N.E.2d 59 (1983); Bedoya, 325 Ill. App. 3d at 940-41; Nunley, 271 Ill. App. 3d at 432.

A "mini-trial" can be avoided by carefully limiting the details of the other crime to what is necessary to "illuminate the issue for which the other crime was introduced." Nunley, 271 Ill. App. 3d at 432. When the unfair prejudice is excessive, a limiting instruction will not save admissibility of the evidence. Nunley, 271 Ill. App. 3d at 433. We believe the other-crime evidence in this case was sufficiently tailored to fulfill its

16

purpose. The details of the assault on T.W. were relevant to show the striking similarities between the two crimes.

It is clear from the record the trial judge carefully analyzed the probative value of the other-crime evidence. In addition to addressing the purpose for which the evidence was admitted and the similarities between the crimes, the judge excluded evidence of the second uncharged offense because it was too dissimilar to the instant case.

Although the defendant contended admissibility of the State's proposed other-crime evidence would create unfair prejudice, the trial court did not refer to that argument when making its ruling. The trial court never mentioned the risk of unfair prejudice. We see no indication the trial court considered the other side of the scale we referred to in Bedoya, 325 Ill. App. 3d at 940. That was error, no matter what the purpose of the evidence was.

Given the inappropriate use of "design" in the limiting instruction, there is great likelihood the jury used the other-crime evidence as proof of the defendant's propensity to commit forcible sexual attacks. In this appeal, the State, in oral argument and its brief, contends the other-crime evidence was admissible to prove defendant's propensity.

In Donoho, the court stressed the importance of the balancing test when other-crime evidence is offered to prove propensity:

> "Nonetheless, we urge trial judges to be cautious in
>
> considering the admissibility of other-crimes evidence to
>
> show propensity by engaging in a meaningful assessment of

17

the probative value versus the prejudicial impact of the

evidence." <u>Donoho</u>, 204 Ill. 2d at 186.

Despite the trial court's failure to conduct an explicit balancing test, we still must determine whether reversible error occurred. Reversal is not warranted if it is unlikely the error influenced the jury. <u>People v. Hall</u>, 194 Ill. 2d 305, 339, 743 N.E.2d 521 (2000). See also <u>People v. Nieves</u>, 193 Ill. 2d 513, 530, 739 N.E.2d 1277 (2000) (improper admission of other-crime evidence is harmless error when a defendant is neither prejudiced nor denied the right to a fair trial.)

Given the striking similarities between the charged and uncharged offenses and the short period of time between the two offenses, it is clear the probative value of the evidence to prove propensity (or intent) was strong. We do not see how the risk of unfair prejudice could be weighty enough to substantially outweigh that probative value. For that reason, we find the trial court's failure to conduct the balancing test was harmless error.

At the same time, we do not mean to downgrade the trial court's duty to conduct the test, especially in light of the supreme court's "meaningful assessment" admonition to trial judges.

II. Defendant's Statement to Victim

Defendant contends the court erred in allowing the testimony of L.M. that defendant said, "This is what I do. This is business," in response to her asking if he was serious. He says the statement, which the State used in its opening statement and closing argument, unfairly implied defendant regularly engaged in criminal activity. In

18

combination with the evidence of the prior alleged sexual assault, defendant says, the evidence of his statement prejudiced him and over-persuaded the jury.

The trial court admitted the testimony because it did not believe the statement implicated defendant in any other crimes. We agree with the trial court. The statement was relevant to show defendant's attempted intimidation of the victim. The implied meaning of the statement was that defendant was serious, not that he was a career criminal. The statement was not relevant for propensity or defendant's prior criminal acts, but for the victim's state of mind in opposition to the defense theory of consent. Admitting it was not error.

III. Illinois Pattern Jury Instructions

Defendant next contends the court erred in failing to instruct the jury in accord with Illinois Pattern Jury Instructions 2.01R and 26.01R. IPI Criminal 4th Nos. 2.01R, 26.01R. The Committee Notes state IPI Criminal 4th 2.01R and 26.01R should be used when instructing the jury on one or more charges that include a lesser offense.

The trial court instructed the jury in accord with IPI Criminal 4th No. 2.01:

> "The defendant is charged with the offenses of aggravated
>
> criminal sexual assault, armed robbery and aggravated
>
> kidnapping. The defendant has pleaded not guilty."

The defendant contends the court should have instructed the jury using IPI Criminal 4th No. 2.01R:

> "The defendant is charged with the offense of aggravated
>
> kidnapping based on armed robbery [or aggravated criminal

19

sexual assault]. The defendant has pleaded not guilty.

Under the law, a person charged with aggravated kidnapping

predicated on armed robbery may be found (1) not guilty of

aggravated kidnapping and not guilty of armed robbery; or

(2) guilty of aggravated kidnapping; or (3) guilty of armed

robbery."

The trial court also gave IPI Criminal 4th No. 26.01. Defendant says the jury instead should have received IPI Criminal 4th No. 26.01R, which would have instructed the jury as to the verdict forms for lesser included offenses.

Although defendant's counsel did not object to the jury instructions, the defendant contends the failure to give proper instructions was plain error. Before engaging in a plain error analysis, we first must consider whether any error occurred. People v. Durr, 215 Ill. 2d 283, 299, 830 N.E.2d 527 (2005), citing People v. Sims, 192 Ill. 2d 592, 621, 736 N.E.2d 1048 (2000).

There was no reversible error in the decision to instruct the jury in accord with IPI Criminal 4th 2.01 and 26.01, rather than 2.01R and 26.01R, because armed robbery and aggravated criminal sexual assault are not lesser-included offenses of aggravated kidnapping. Rather, they are predicate offenses for aggravated kidnapping. The aggravated kidnapping statute provides a kidnapper is guilty of aggravated kidnapping when he "inflicts great bodily harm, other than by the discharge of a firearm, or commits another felony upon his victim." 720 ILCS 5/10-2(a)(3) (West 1998). The "other felonies"--aggravated criminal sexual assault and armed robbery--are triggers used to

elevate the charge of kidnapping to aggravated kidnapping.

Under Illinois law, a defendant may be convicted of both the felony that is the predicate for the aggravated kidnapping charge and aggravated kidnapping itself. Nelson v. Thieret, 793 F.2d 146, 149 (7th Cir. 1986). See also People v. McDarrah, 175 Ill. App. 3d 284, 300, 529 N.E.2d 808 (1988) (a defendant may properly be convicted of both the aggravated crime and the second felony underlying that crime); People v. Hairston, 207 Ill. App. 3d 674, 680, 566 N.E.2d 343 (1991) (aggravated battery and armed robbery are not lesser included offenses of aggravated kidnapping); People v. Charles, 217 Ill. App. 3d 509, 514-15, 577 N.E.2d 534 (1991) (sexual assault is not an included offense of aggravated kidnapping).

The defendant contends the court must look to the charging instrument to determine whether the description of the greater offense contains a "broad foundation" or "main outline" of the lesser offense. People v. Novak, 163 Ill. 2d 93, 106-107, 643 N.E.2d 762 (1994); People v. Peacock, 359 Ill. App. 3d 326, 334-35, 833 N.E.2d 396 (2005). We disagree. It is not necessary to analyze the charging instrument where aggravated criminal sexual assault and armed robbery are predicate offenses and not lesser-included offenses of aggravated kidnapping. All are Class X offenses.

Defendant also contends the not guilty verdict forms were confusing to jurors. The verdict forms the jury actually received consisted of guilty and not guilty forms for each count of aggravated criminal sexual assault, each count of aggravated kidnapping, and a count of armed robbery. The not guilty forms for aggravated kidnapping state, "We, the jury, find the defendant, Terry Boyd, Not Guilty of Aggravated Kidnapping and

21

committed Armed Robbery [or Aggravated Criminal Sexual Assault] upon [L.M.]."
(Emphasis added.)

It appears there was an error in inserting the word "committed" in the not guilty forms for the two aggravated kidnapping charges. No one noticed it at the time. Defendant contends a reasonable juror would interpret the word to mean the jury must necessarily convict defendant of armed robbery if it chose to acquit him of aggravated kidnapping based on armed robbery. It did not choose to acquit the defendant of aggravated kidnapping based on armed robbery, reason enough to find the error caused defendant no harm

In Durr, the trial court refused the defendant's tendered instruction, which tracked the pertinent parts of IPI Criminal 4th No. 2.01R. Durr, 215 Ill. 2d at 300. The supreme court held it was error for the trial court to give the jury non-IPI instructions where the defense tendered IPI instructions that stated the law clearly and accurately. Durr, 215 Ill. 2d at 301. However, the court held the error was de minimus and did not result in "fundamental unfairness" or threaten the fairness of defendant's trial. Durr, 215 Ill. 2d at 301. The court noted the jury was given the option of returning a general "not guilty" verdict. Durr, 215 Ill. 2d at 302.

Here, even if the wording of the verdict forms was in error, that error did not rise to the level of a fundamental error. The jury was given separate guilty and not guilty verdict forms for each charge. The jury was given IPI Criminal 4th No. 8.05B and instructed that it should find defendant not guilty of aggravated kidnapping if it did not find the State had proved beyond a reasonable doubt that defendant committed

22

aggravated criminal sexual assault or armed robbery upon the victim.

IV.    Trial Court's Responses to Jury's Questions

Approximately two hours into deliberations, the jury sent three questions to the trial judge.  The questions, with the trial judge's responses in parentheses, were as follows:

1. Copy of [L.M.]'s testimony w/ regards to 1st alley visit. (You will receive the entire transcript of [L.M.]'s testimony in a few minutes.)

2. Must a gun/weapon be displayed or can the mention of a gun be enough? Must it be shown? (Reread your instructions.  You have your instructions.  Continue to deliberate.)

3. Can we find out if def. is left/right handed? (No.)

About a half-hour later, the jury sent a second note asking, "Can we find guilty of lesser charges or must we convict of 'aggrevated' [sic.] charges only."  The trial court informed defendant it could instruct the jury on the lesser-included charges of criminal sexual assault and kidnapping if he wished.  The defendant said he agreed with his attorney not to send the lesser-included instructions.  The court answered the jury's note as follows: "You have your instructions.  Continue to deliberate."

The jury sent a third note two hours later.  It said, "We cannot agree as to whether there was a gun (8) or there was not a gun (4).  We believe that is necessary before we proceed further--we appear not to be making any progress in this matter.  Please advise."  The court answered, "Review the instructions and the evidence.  Continue to deliberate."  The jury sent a fourth note requesting the transcript from Officer Gibbs' testimony.  The jury reached a verdict approximately 6 1/2 hours after the

start of deliberations.

In each instance, defense counsel either agreed to or suggested the answer given by the trial court to the jury. No objection was made. The defendant forfeited his right to raise the issues on appeal. People v. Enoch, 122 Ill. 2d 176, 186, 522 N.E.2d 1124 (1988). We will, however, briefly comment on two of the trial court's responses to the jury's notes because the defendant asks us to consider whether plain error took place.

A. Coercion of Minority Jurors

The defendant contends the trial court coerced the minority of jurors into entering a verdict when it responded to the jury's third note that indicated the jury could not agree about whether a gun was present. He says the court's direction to continue deliberating "did not provide any guidance to the jury, leading it to believe that it would not be released from service until a unanimous verdict was reached."

A trial court may not "hasten" a verdict by giving the jury an instruction that has the effect of coercing jurors into surrendering their views. People v. Gregory, 184 Ill. App. 3d 676, 680-81, 540 N.E.2d 854 (1989). Nevertheless, a trial judge has the duty to provide guidance to a jury that is not hopelessly deadlocked. Gregory, 184 Ill. App. 3d at 681. "A court's instruction to a jury to continue deliberating should be simple, neutral, and not coercive." Gregory, 184 Ill. App. 3d at 681. The test is whether under the circumstances the language used "actually coerced or interfered with the deliberations of the jurors to the prejudice of the defendant." Gregory, 184 Ill. App. 3d at 681.

The defendant contends the court should have instructed the jury in accord with

the instruction suggested by the court in People v. Prim, 53 Ill. 2d 62, 75-76, 289 N.E.2d 601 (1972): "It is your duty, as jurors, to consult with one another and to deliberate with a view to reaching an agreement, if you can do so without violence to individual judgment."

The mere failure to give a Prim instruction is not reversible error. Gregory, 184 Ill. App. 3d at 681. The goal of the instruction recommended in Prim was to eliminate supplemental instructions to jurors to "heed the majority" as a means of securing the verdict. Gregory, 184 Ill. App. 3d at 681. In this case, the jury did not say it was deadlocked. Even if it had, the judge's response was neutral, and the language was not coercive or intended to "hasten" the verdict. There was no error.

B. Failure to Respond to Jury's Legal Question

Defendant contends the court erred in failing to respond to the jury's question: "Must a gun/weapon be displayed or can the mention of a gun be enough? Must it be shown?" The court responded, "Reread your instructions. You have your instructions. Continue to deliberate." The court's response, with the exception of "reread your instructions," was requested by defense counsel.

The general rule is that a trial court has a duty to answer a jury's explicit legal question or a request for clarification on a point of law arising from facts about which there is doubt or confusion. People v. Childs, 159 Ill. 2d 217, 228-29, 636 N.E.2d 534 (1994). However, a court may properly decline to answer a jury's inquiries where the instructions are readily understandable and sufficiently explain the relevant law, where further instructions might mislead the jury, where the jury's inquiry involves a question of

fact, or the giving of an answer would require the court to express an opinion directing a verdict. Childs, 159 Ill. 2d at 228.

There was no error in the trial court's response. The jury's instructions clearly stated the elements of each offense, and the answer to the jury's question should have been clear upon re-reading the instructions. The jury was instructed that a person commits aggravated criminal sexual assault when he commits criminal sexual assault and displays a dangerous weapon. As to the armed robbery charge, the jury was instructed that it must find defendant was carrying a dangerous weapon on or about his person or was otherwise armed with it.

V. Vacation of Convictions

Defendant contends one of his aggravated kidnapping convictions should be vacated because both convictions arose from the same act.

Under the one-act, one-crime rule, we ask two questions: (1) whether the defendant's conduct consisted of separate acts or a single physical act, and (2) whether any of the offenses are lesser-included offenses. People v. Rodriguez, 169 Ill. 2d 183, 186, 661 N.E.2d 305 (1996). The State agrees one of defendant's aggravated kidnapping charges should be vacated because both were carved from the same physical act of inducing the victim by deceit or enticement to go from one place to another with the intent to secretly confine her against her will. The State asks that we vacate the count of aggravated kidnapping predicated on armed robbery, which it considers the less serious offense.

Defendant contends this court also should vacate the aggravated criminal assault

26

conviction that serves as the predicate offense for the remaining aggravated kidnapping conviction. Count 35 of the indictment describes the aggravated kidnapping charge as follows: "he, by deceit or enticement induced [L.M.] to go from one place to another with intent secretly to confine her against her will and committed a felony, to wit: aggravated criminal sexual assault upon [L.M.]." Under the one-act, one-crime rule, multiple convictions are improper if any of the offenses are included offenses. Rodriguez, 169 Ill. 2d at 186. However, " 'when more than one offense arises from a series of incidental or closely related acts and the offenses are not, by definition, lesser included offenses, convictions with concurrent sentences can be entered.' " Rodriguez, 169 Ill. 2d at 186, quoting People v. King, 66 Ill. 2d 551, 566, 363 N.E.2d 838 (1977).

As we explained above, aggravated criminal sexual assault is not a lesser-included offense of aggravated kidnapping. It is a predicate offense. Accordingly, we do not vacate defendant's aggravated criminal sexual assault conviction that is the predicate for his aggravated kidnapping conviction.

CONCLUSION

We vacate defendant's conviction for aggravated kidnapping predicated on armed robbery and affirm the remaining convictions and sentences.

Affirmed in part and vacated in part.

GARCIA, P.J., and HALL, J., concur.