NOTICE
This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

2020 IL App (4th) 170810-U

NO. 4-17-0810

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
May 1, 2020
Carla Bender
4ᵗʰ District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Coles County |
| JEFFREY JONES, | ) | No. 16CF322 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Brien J. O'Brien, |
| | ) | Judge Presiding. |

JUSTICE HARRIS delivered the judgment of the court.
Justices Knecht and Cavanagh concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The appellate court affirmed, finding the trial court did not abuse its discretion in granting the State's motion to admit other-crimes evidence.

¶ 2    A jury found defendant, Jeffrey Jones, guilty of 17 counts of aggravated criminal sexual abuse and 6 counts of predatory criminal sexual assault of a child. Defendant appeals, arguing the trial court committed reversible error by granting, in its entirety, the State's pretrial motion to admit other-crimes evidence under section 115-7.3 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/115-7.3 (West 2016)). Specifically, while defendant concedes "some" evidence was admissible to establish his propensity to commit the charged offenses, he contends the trial court abused its discretion by allowing the State to present an excessive amount of other-crimes evidence, resulting in a confusing "mini-trial" on the uncharged conduct.

¶ 3                                     I. BACKGROUND

¶ 4                                     A. The Charges

¶ 5        In September 2016, the State charged defendant with 17 counts of aggravated criminal sexual abuse (720 ILCS 5/11-1.60(d) (West 2014)) and 7 counts of predatory criminal sexual assault of a child (*id.* § 11-1.40(a)(1)). The charges alleged conduct against four different minors.

¶ 6                                     1. *B.B.*

¶ 7        Fourteen of the aggravated-criminal-sexual-abuse counts related to B.B. (born November 7, 2000). The State alleged that "between about October 2014 and October 2015," defendant (1) "had B.B. place his mouth on defendant's penis," (2) "placed his penis in B.B.'s anus," and (3) "placed his mouth on B.B.'s penis ***."

¶ 8                                     2. *M.S.*

¶ 9        Six of the predatory-criminal-sexual-assault-of-a-child counts related to M.S. (born May 31, 2005). According to the State, "in or about summer 2016," defendant (1) "placed M.S.'s penis in his mouth" and (2) "touched M.S.'s penis with his hand."

¶ 10                                    3. *T.S.*

¶ 11       One of the predatory-criminal-sexual-assault-of-a-child counts related to T.S. (born March 3, 2004). The State alleged that "in or about August 2016," defendant "touched T.S.'s penis with his hand."

¶ 12                                    4. *M.F.*

¶ 13       Three of the aggravated-criminal-sexual-abuse counts related to M.F. (born March 29, 2002). The State alleged that "in or about summer 2016," defendant "placed M.F.'s penis in his mouth ***."

¶ 14                              B. Other-Crimes Evidence

¶ 15           Prior to trial, the State moved to admit the following evidence of defendant's

previous sexual assaults on his adopted son, C.J., to show defendant's propensity to commit the

charged offenses: (1) testimony from C.J.; (2) a certified copy of a two-count information filed in

Moultrie County case No. 00-CF-24 charging defendant with criminal sexual assault and

aggravated criminal sexual abuse of C.J.; and (3) defendant's guilty plea and a certified copy of

the judgment of conviction in case No. 00-CF-24.

¶ 16           C.J. (born September 10, 1983) testified at a hearing on the State's motion that he

was defendant's adopted son. C.J. first met defendant at the age of six or seven, when defendant

began dating his mother. Shortly thereafter, defendant married C.J.'s mother and began living

with her, C.J., and C.J.'s younger brother. C.J. testified that he was seven or eight years old when

defendant first touched him inappropriately. He explained that on this initial occasion, he was

asleep in his bedroom and "woke up to [defendant] sliding his hand down inside the front of my

pants;" defendant "proceeded to fondle [C.J.'s penis] and then once [C.J.] was erect, he

proceeded to start performing oral sex." C.J. estimated that between the ages of 7 and 16,

defendant fondled his penis and performed oral sex on him "maybe two times, three times a

week." C.J. also stated that defendant would usually cover C.J.'s head while performing oral sex

and he almost always ejaculated into defendant's mouth. Additionally, C.J. testified that

defendant occasionally "would stick his finger in my anus" or "place[ ] his penis in [my] hand."

C.J. described several specific instances of abuse, including the final instance, in which C.J.'s

mother entered his bedroom early one morning to discover defendant performing oral sex on

him. C.J.'s mother reported the incident to the police, which led to defendant being charged with,

and pleading guilty to, criminal sexual assault and aggravated criminal sexual abuse.

¶ 17　　　　Defendant argued C.J.'s testimony should be excluded as unduly prejudicial, expressing concern that the testimony would become "the focal point of the trial, and kind of— kind of having a trial within a trial." Alternatively, defendant maintained "there should be some sort of limitation on what [C.J.] testifies to," such as only allowing him to testify to the incident that served as the basis for the formal charges. The State argued C.J.'s testimony should be allowed because it was highly probative and unlikely to lead to "a trial within a trial" because C.J. would be the sole witness on the issue and would only testify as to several specific instances of abuse. Moreover, the State asserted C.J.'s testimony was proper because it established "a continuing narrative."

¶ 18　　　　In deciding the State's motion, the trial court stated it had considered the factors enumerated in section 115-7.3 of the Code—*i.e.*, (1) temporal proximity, (2) factual similarity, and (3) other relevant circumstances—and concluded that C.J.'s testimony was highly probative. Next, the court identified the potential for prejudice from the "fairly substantial quantity or volume of other crimes evidence." However, after noting C.J. would be the only witness to testify on the subject, the court ruled as follows:

> "THE COURT: I don't anticipate that the State will be asking C.J. to testify in detail about each of the hundreds of incidents. What I anticipate is, something similar to what we heard last week where he describes those incidents that stick out in his mind, and I think it is an ongoing narrative. It shows a course of conduct. It shows a common design or scheme. Even though there may be a large number of acts, I ultimately come to the conclusion, after analyzing all of these factors very carefully, that the prejudicial effect of the other crimes evidence does not substantially outweigh its probative value; and thus, it will be admitted."

¶ 19                                    C. Jury Trial

¶ 20                                     1. *B.B.*

¶ 21        B.B. testified that he first met defendant around age seven when they were neighbors in Edgar County, Illinois. B.B. stated that he was also approximately seven years old when defendant first touched him inappropriately by placing his hand on B.B.'s penis. B.B. testified that this occurred "20 or 30" times. B.B. further testified that when he was eight or nine, defendant began placing his penis in B.B.'s anus and "forc[ing] B.B. to suck his dick." The anal penetration occurred "10 or 20" times, while the oral sex occurred "too many [times] to count."

¶ 22        In May 2014, defendant moved to a motel in Cumberland County, Illinois. B.B. visited defendant every weekend and slept in the same bed as defendant. B.B. testified that the "same stuff" occurred when he visited defendant in Cumberland County.

¶ 23        Around October 2014, defendant moved to a one-bedroom apartment in Coles County, Illinois. B.B. visited defendant every weekend and during the summer, and he would stay overnight in defendant's bed each visit. B.B. testified that the "same thing" happened to him when he visited defendant in Coles County as occurred when he was with defendant in Edgar and Cumberland counties. The abuse continued until May 2015.

¶ 24                                     2. *M.S.*

¶ 25        M.S. met defendant through B.B., his cousin, in early summer 2016 when he was 11 years old. Several weeks after meeting defendant, M.S. began staying overnight at defendant's apartment with his brother, T.S., and B.B. One night, defendant told M.S. to sleep in the bed with him. M.S. testified, "I was just sleeping, and I felt something go down my pants, and he started to pull my pants down." M.S. explained that defendant touched M.S.'s penis with his hand and then placed it in his mouth while holding down M.S.'s arms. M.S. testified that

defendant would also "jerk off to it." This same form of abuse occurred on three separate occasions.

¶ 26                                    3. *T.S.*

¶ 27        T.S. is M.S.'s older brother and B.B.'s cousin. He was also introduced to defendant by B.B. during the summer of 2016 when he was 12 years old. T.S. testified that he went to defendant's apartment "five or six" times that summer and he stayed overnight on three occasions. The last night he stayed at defendant's apartment, T.S. slept in the bed with M.S. and defendant. T.S. testified that while in bed, defendant put his hand down T.S.'s pants and touched T.S.'s penis with his hand.

¶ 28                                    4. *M.F.*

¶ 29        M.F. was friends with B.B. and went to defendant's apartment with him "a lot." M.F. was 14 years old at the time. M.F. testified that one night, "I was asleep, and I felt someone rubbing on my penis ***." M.F. described another incident where he was sleeping in defendant's bed when defendant "woke me up about 2:00 in the morning, taking my pants off and started sucking on my penis." M.F. testified that this occurred on three separate occasions and he ejaculated into defendant's mouth on two of those occasions.

¶ 30                                    5. *C.J.*

¶ 31        C.J.'s trial testimony mirrored his testimony from the hearing on the State's other-crimes motion. Following C.J.'s testimony, the trial court took judicial notice of Moultrie County case No. 00-CF-24, read to the jury the allegations contained in the two-count information filed against defendant in that case, and informed the jury that defendant pleaded guilty to, and was convicted of, both counts.

¶ 32                                    6. *Defendant*

¶ 33 Defendant testified on his own behalf. Defendant acknowledged sexually assaulting C.J. and expressed regret for having done so. He also acknowledged being acquainted with the four alleged victims. However, defendant denied all of the conduct for which he was charged in the within action.

¶ 34                                                  7. *Verdict*

¶ 35 The jury found defendant guilty on 23 of the 24 counts and not guilty on the count related to T.S.

¶ 36                                                  C. Sentence

¶ 37 The trial court sentenced defendant to natural life imprisonment without the possibility of parole.

¶ 38 This appeal followed.

¶ 39                                                  II. ANALYSIS

¶ 40 Defendant argues the trial court erred when it granted the State's other-crimes motion. Specifically, while defendant concedes "some" evidence was admissible under section 115-7.3 to establish propensity, he contends the trial court abused its discretion by allowing the State to present an excessive amount of other-crimes evidence, resulting in a confusing "mini-trial" on the uncharged conduct.

¶ 41 We review a trial court's ruling on the admissibility of other-crimes evidence for an abuse of discretion, meaning we will reverse only if we find the trial court's ruling was "arbitrary, fanciful or unreasonable or where no reasonable man would take the view adopted by the trial court." (Internal quotation marks omitted.) *People v. Donoho*, 204 Ill. 2d 159, 182, 788 N.E.2d 707, 721 (2003).

¶ 42    Section 115-7.3 of the Code (725 ILCS 5/115-7.3 (West 2016)) contains a limited exception to the common-law rule prohibiting the use of other-crimes evidence to show propensity. See, *e.g.*, *People v. Ward*, 2011 IL 108690, ¶ 25, 952 N.E.2d 601. Before the evidence may be admitted, the trial court must apply a balancing test, weighing the probative value of the evidence against its prejudicial effect. *Id.* ¶ 26; *Donoho*, 204 Ill. 2d at 186 ("[W]e urge trial judges to be cautious in considering the admissibility of other-crimes evidence to show propensity by engaging in a meaningful assessment of the probative value versus the prejudicial impact of the evidence."). When applying the balancing test, section 115-7.3 directs courts to consider "(1) the proximity in time to the charged or predicate offense; (2) the degree of factual similarity to the charged or predicate offense; or (3) other relevant facts and circumstances." 725 ILCS 5/115-7.3(c) (West 2016). Additionally, "a court should consider whether the other-crimes evidence will become the focus of the trial, or whether it might otherwise be misleading or confusing to the jury." *People v. Perez*, 2012 IL App (2d) 100865, ¶ 47, 969 N.E.2d 893. If the court determines the probative value of the other-crimes evidence is not substantially outweighed by its prejudicial effect, the evidence may be admitted under the statute. *Donoho*, 204 Ill. 2d at 183.

¶ 43    However, the State cannot introduce an unlimited amount of evidence under section 115-7.3; reviewing courts have "recognized that there might be times when the sheer volume of other-crimes evidence renders it unduly prejudicial." *Perez*, 2012 IL App (2d) 100865, ¶ 48 (citing *People v. Cardamone*, 381 Ill. App. 3d 462, 885 N.E.2d 1159 (2008) (finding an abuse of discretion where the trial court allowed 15 other-crimes victims to testify to hundreds of uncharged acts at defendant's trial on 26 charged acts)). Trial courts must limit the admission of other-crimes evidence to avoid a "mini-trial" on the uncharged conduct that could

- 8 -

lead to juror confusion or undue delay. See, *e.g.*, *People v. Boyd*, 366 Ill. App. 3d 84, 94, 851 N.E.2d 827, 837-38 (2006). At exactly what point the quantity of evidence becomes unduly prejudicial is left to the trial court's discretion, and reviewing courts have noted that "it is difficult to determine precisely where to draw the line." *Cardamone*, 381 Ill. App. 3d at 497. "Thus, while undue prejudice *can* arise in a section 115-7.3 case, 'the actual limits on the trial court's decisions on the quantity of propensity evidence to be admitted under section 115-7.3 are relatively modest, especially when combined with the highly deferential abuse-of-discretion standard that governs review of such trial court decisions.' " (Emphasis in original.) *Perez*, 2012 IL App (2d) 100865, ¶ 49 (quoting *People v. Walston*, 386 Ill. App. 3d 598, 621, 900 N.E.2d 267, 289 (2008)).

¶ 44        Here, the trial court allowed the State to present the following other-crimes evidence: (1) C.J.'s testimony describing a pattern of abuse occurring over the course of approximately 10 years and detailing several specific instances of abuse; (2) a two-count information charging defendant with criminal sexual assault and aggravated criminal sexual abuse of C.J.; and (3) defendant's guilty plea and a certified copy of the judgment of conviction relating to his abuse of C.J. Our review of the record shows that the court clearly engaged in the type of "meaningful assessment of the probative value versus the prejudicial impact of the evidence" urged by our supreme court, and we find its ruling to admit the evidence did not amount to an abuse of discretion. *Donoho*, 204 Ill. 2d at 186.

¶ 45        The trial court first identified the three factors enumerated in section 115-7.3(c) and then carefully considered each factor, ultimately concluding the other-crimes evidence was highly probative. See 725 ILCS 5/115-7.3(c) (West 2016). The court's finding was reasonable considering the significant factual similarities between defendant's actions directed against C.J.,

which he admitted to, and the charged conduct in this case. Next, the court weighed the probative value of the other-crimes evidence against its prejudicial effect, specifically highlighting the "troublesome *** volume of evidence offered to show propensity." The court concluded that the amount of other-crimes evidence offered was not so unduly prejudicial as to substantially outweigh its highly probative nature, as C.J. was the sole witness who would testify on the subject, and only as to several specific instances of abuse, thereby limiting the possibility of conducting a "mini-trial" on the uncharged conduct. Given the court's careful consideration of the relevant factors and its efforts to limit any undue prejudice, we cannot say that its decision to allow a limited amount of other-crimes evidence was so arbitrary, fanciful, or unreasonable as to constitute an abuse of discretion.

¶ 46        We reject defendant's contentions that (1) the trial court allowed the State to present an excessive amount of other-crimes evidence and (2) the evidence was unnecessarily graphic in detail. As the trial court properly noted, this was not a case such as *Cardamone*, where the trial court allowed 15 victims to testify to hundreds of uncharged acts. Rather, only C.J. testified and only as to certain specific acts of abuse. The amount of evidence relating to defendant's acts against C.J. was relatively small compared with the evidence of his abuse against the four victims in this case. We cannot say it was unreasonable for the court to conclude the other-crimes evidence would not amount to a "mini-trial" on the uncharged conduct that would confuse the jury and prejudice defendant. See *Perez*, 2012 IL App (2d) 100865, ¶¶ 46-54 (finding no abuse of discretion despite the trial court allowing the State to present more evidence of uncharged conduct than evidence of charged conduct). Moreover, we disagree that defendant was unduly prejudiced by the graphic nature of C.J.'s testimony. His testimony was no more graphic than the testimony of the other victims relating to the charged conduct. In fact, C.J.'s

testimony was very similar to their testimony, which was supportive of the court's finding of probativeness. The jury did not hear from C.J. anything more shocking or graphic than what they had already heard from the four other victims.

¶ 47        Accordingly, we find no abuse of the trial court's discretion in the admission of the other-crimes evidence. See *Walston*, 386 Ill. App. 3d at 621-22 ("While a reviewing court will reverse the trial court's decision to allow too much otherwise relevant propensity evidence under section 115-7.3 in extreme situations such as that presented in *Cardamone*, the modest restrictions [imposed on the trial court's discretion] will in most other cases dictate affirmance.").

¶ 48                              III. CONCLUSION

¶ 49        For the reasons stated, we affirm the trial court's judgment.

¶ 50        Affirmed.