FIRST DIVISION

No. 1-07-0715

THE PEOPLE OF THE STATE OF ILLINOIS,      )     Appeal from the
                                          )     Circuit Court of
     Plaintiff-Appellee,                  )     Cook County.
                                          )
          v.                              )
                                          )
LORELL JOHNSON,                           )     Honorable
                                          )     Stanley J. Sacks,
     Defendant-Appellant.                 )     Judge Presiding.


     JUSTICE LAMPKIN[1] delivered the opinion of the court:

     Faced with overwhelming DNA evidence, the defense in this

sexual assault and aggravated kidnapping case attempted to

persuade the jury the State could not prove the defendant's

sexual contact with the alleged victim was forcible.  The defense

did not succeed.  Defendant Lorell Johnson was convicted of two

counts of aggravated criminal sexual assault and one count of

_____

     [1]This opinion was originally authored by Justice Warren

Wolfson.  Justice Lampkin was appointed to the Illinois Appellate

Court by the Illinois Supreme Court on September 25, 2009,

replacing Justice Wolfson, retired, as a member on the panel

assigned to review this case.  Justice Lampkin, along with the

other members of the panel, has reconsidered this case pursuant

to a supreme court supervisory order.  People v. Johnson, 237

Ill. 2d 574, 934 N.E.2d 1005 (2010).

1-07-0715

aggravated kidnapping.  He was sentenced to two consecutive 25-year prison terms.

On appeal, defendant contends: (1) the trial court erred in admitting the inculpatory DNA evidence because sufficient foundation was not established for the forensic scientist's opinion testimony on the matter; (2) the forensic scientist's opinion testimony violated the defendant's sixth amendment confrontation rights; and (3) the trial court erred in allowing the State to present evidence of an uncharged sexual assault, under section 115-7.3 of the Code of Criminal Procedure (Code) (725 ILCS 5/115-7.3(c) (West 2006)), to prove defendant had a propensity to commit sexual offenses.  We affirm defendant's convictions and sentences.

FACTS

At trial, the victim, T.W., testified she was walking past an alley at around 9:30 p.m. on March 2, 2002, when defendant grabbed her and said "if you do what I say, you won't get hurt." T.W. said defendant did not have a weapon.  Defendant then led T.W. through an alley to a large abandoned building, dragged her into an L-shaped corridor, and pushed her down some stairs.  T.W. said defendant threatened to kill her if she did not do what he said.

T.W. said defendant told her to "suck his dick." After T.W. pulled defendant's penis out of her mouth and told him she was so scared that she might bite him, defendant pressed her against a brick wall, placed a finger in her vagina, and then put his penis inside her vagina. Once finished, defendant hopped over a fence and fled. T.W. was not anally penetrated.

T.W. went back to the street, flagged down a police officer, and told him that she had been raped. After T.W. led the police back to the abandoned building, she was taken to St. Bernard's Hospital, where she provided a blood sample and vaginal and oral swabs for a sexual assault evidence collection kit. The oral and vaginal swabs were sent to the Illinois State Police Forensic Science Center in Chicago. After the vaginal swabs tested positive for the presence of semen, they were sent to Orchid Cellmark, a private lab in Maryland, for DNA testing.

Cellmark prepared a male DNA profile from the vaginal swabs. Cellmark also prepared a DNA profile for the victim. The male DNA profile was entered into the Illinois State Police DNA database. In June 2004, the database reported an association between the male DNA profile prepared by Cellmark and defendant's DNA profile.

After defendant was arrested, T.W. identified him as her attacker in a lineup on January 25, 2005.

1-07-0715

Following a jury trial, defendant was found guilty of two counts of aggravated criminal sexual assault and one count of aggravated kidnapping. The trial court sentenced defendant to two consecutive 25-year prison terms.

DECISION

I. Other-Crimes Evidence

Defendant contends evidence of his involvement in an uncharged sexual assault was inadmissible to prove his propensity to commit sexual offenses under section 115-7.3 of the Code. Specifically, defendant contends the unfairly prejudicial effect of the other-crimes evidence clearly outweighed its probative value in this case because the charged and uncharged offenses were not substantially similar.

Before trial, the State filed a motion to allow other-crimes evidence to show defendant's propensity pursuant to section 115-7.3 of the Code, defendant's intent, and lack of consent. Specifically, the State sought to introduce evidence of three uncharged sexual assaults involving defendant--the sexual assault of F.F. on January 12, 2003; the sexual assault of C.V. on November 9, 2003; and the sexual assault of O.W. on January 19, 2005.

Following a hearing, the trial court, over defense counsel's objection, granted the State's motion. In reaching its ruling,

1-07-0715

the court said:

"THE COURT: There's evidence to show propensity on the part of Lorell Johnson to commit sexual crimes, and I'm not sure how you'd word the limiting instruction, they might even say that, if there's admission to show propensity.  That could be argued out as far as the wording itself, but the case law indicates they're admissible for that purpose, propensity.  *** And I think the cases sort of suggest or even say that they're admissible to show the likelihood or lack or likelihood that more than one woman would have consent to having sex under the same circumstances months to years or different times apart.  So I'm not a big fan of the statute, but the law requires me to follow it.  And I think under the circumstances of these cases, the evidence of other sexual assaults alleged to be committed by Lorell Johnson are admissible in the [T.W.] case March of 2002, which show what the statute refers to in the case law is

-5-

[sic] propensity in sexual assault. *** The

facts are sufficient enough to show arguably

a propensity to commit sex crimes by Lorell

Johnson, so those crimes will be admitted

with a limiting instruction.

At trial, C.V., the witness in the uncharged sexual assault, testified that around 5 p.m. on November 10, 2003, she was walking home from the grocery store when a car pulled into an alleyway and blocked her path.  A man, whom C.V. identified as defendant in open court, got out of the passenger side of the car and asked C.V. for directions.  Defendant then pulled C.V. into the backseat of the car and started removing her clothes.  When C.V. tried to get out of the car, defendant hit her on the temple and said "don't scream or else I'm going to kill you."  The car then started to drive down the alley.

Defendant and the black male driver pulled C.V. from the car, dragged her inside a dark abandoned building, and closed the door.  After defendant removed C.V.'s clothes, the driver put his penis inside C.V.'s mouth while defendant put his penis inside her anus.  Defendant orally, anally, and vaginally penetrated C.V. during the assault.  At some point during the assault C.V. had an asthma attack and blacked out.  When she awoke, she was alone in the abandoned building.  C.V. returned home and called

the police.  C.V. was then taken to a hospital where the staff collected biological samples.  C.V. admitted she told police defendant had blown cocaine in her face and given her alcohol during the assault.

On January 25, 2005, while C.V. was in the hospital receiving treatment for an unrelated medical problem, Detective Hagan showed C.V. four photographs and asked if she could identify her attacker.  C.V. testified she immediately identified defendant as the attacker from the photographs.

The State did not present evidence at trial regarding defendant's involvement in the uncharged sexual assaults of F.F. on January 12, 2003, or of O.W. on January 19, 2005.

Following closing arguments, the jury was given the following instruction regarding other-crimes evidence:

> "Evidence has been received that the
> defendant has been involved in an offense
> other than that charged in the indictment.
> This evidence has been received on the issue
> of the defendant's propensity to commit
> criminal sexual assault and may be considered
> by you only for that limited purpose.  It's
> for you to determine whether the defendant
> was involved in that offense, and if so, what

> weight should be given to this evidence on
> the issue of propensity to commit criminal
> sexual assault."

A trial court's decision to admit other-crimes evidence will not be reversed absent an abuse of discretion. People v. Donoho, 204 Ill. 2d 159, 182, 788 N.E.2d 707 (2003); People v. Childress, 338 Ill. App. 3d 540, 552, 789 N.E.2d 330 (2003). We will find an abuse of discretion if the trial court's evaluation is unreasonable, arbitrary, or fanciful, or where no reasonable person would adopt the trial court's view. Donoho, 204 Ill. 2d at 182.

Under the common law, other-crimes evidence normally is inadmissible if offered only to demonstrate the defendant's propensity to commit the charged crime. Donoho, 204 Ill. 2d at 169; People v. Manning, 182 Ill. 2d 193, 213, 695 N.E.2d 423 (1998). Evidence regarding other crimes generally is admissible only if offered to prove intent, modus operandi, identity, motive, absence of mistake, or any relevant fact other than propensity. Donoho, 204 Ill. 2d at 170; People v. Illgen, 145 Ill. 2d 353, 364-65, 583 N.E.2d 515 (1991).

However, section 115-7.3 of the Code provides an exception to the general rule in criminal cases, where, as here, a defendant is accused of criminal sexual assault. 725 ILCS 5/115-

1-07-0715

7.3(a)(1) (West 2006).  In such cases, "evidence of the defendant's commission of another offense or offenses set forth in paragraph (1), (2), or (3) of subsection (a), or evidence to rebut that proof or an inference of that proof, may be admissible (if that evidence is otherwise admissible under the rules of evidence) and may be considered for its bearing on any matter to which it is relevant."  725 ILCS 5/115-7.3(b) (West 2006).

In Donoho, our supreme court held the legislature enacted section 115-7.3 of the Code to "enable courts to admit evidence of other crimes to show defendant's propensity to commit sex offenses if the requirements of section 115-7.3 are met." Donoho, 204 Ill. 2d at 176.

Where other-crimes evidence meets the preliminary statutory requirements, the evidence is admissible if it is relevant and if its probative value is not substantially outweighed by its prejudicial effect.  Donoho, 204 Ill. 2d at 182-83.  "The key to balancing the probative value of other crimes evidence to prove propensity against its possible prejudicial effect is to avoid admitting evidence that entices a jury to find defendant guilty '*only* because it feels he is a bad person deserving punishment.' "  (Emphasis in original.)  People v. Holmes, 383 Ill. App. 3d 506, 515, 890 N.E.2d 1045 (2008), quoting Childress, 338 Ill. App. 3d at 548.

In weighing the probative value of the evidence against the undue prejudice to the defendant, a court may consider:

> "(1) the proximity in time to the charged or predicate offense;
>
> (2) the degree of factual similarity to the charged or predicate offense; or
>
> (3) other relevant facts and circumstances."  725 ILCS 5/115-7.3(c) (West 2006).

Donoho, 204 Ill. 2d at 182-83.

Looking at the other side of the scale, undue prejudice "speaks to the capacity of some concededly relevant evidence to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged."  Old Chief v. United States, 519 U.S. 172, 180, 136 L. Ed. 2d 574, 588, 117 S. Ct. 644, 650 (1997); People v. Boyd, 366 Ill. App. 3d 84, 94, 851 N.E.2d 827 (2006).  Other-crimes evidence, when relevant, must not become a focal point of the trial.  Boyd, 366 Ill. App. 3d at 94.  "That is, the trial court should not permit a 'mini-trial' of the other, uncharged offense, but should allow only that which is necessary to 'illuminate the issue for which the other crime was introduced.' "  People v. Bedoya, 325 Ill. App. 3d 926, 938, 758 N.E.2d 366 (2001), quoting People v. Nunley, 271 Ill. App. 3d

1-07-0715

427, 432, 648 N.E.2d 1015 (1995).

The record reflects defendant raised a no-force defense at trial. During opening statements, defense counsel said: "The evidence you will hear will show that there was sexual conduct between [T.W.] and [defendant]. The evidence will show you that this conduct was mutual conduct and it was consensual." Defense counsel returned to the no-force defense during closing argument: "It's not a rape. I don't care how much everyone gets up and tells you rape, rape, rape. It's not a rape. *** But the reality is there has been no evidence of force."

The State specifically asked the trial court to allow the other-crimes evidence to "show intent and lack of consent," as well as defendant's propensity. Although the trial court never ruled on whether the other-crimes evidence was relevant to prove lack of consent, we find defendant's no-force defense at trial increased the probative value of C.V.'s other-crime testimony.

In Boyd, we recognized that in cases where a defendant claims the victim consented to the sexual assault, "courts have found other-crime evidence relevant to prove defendant's criminal intent or lack of an innocent frame of mind." Boyd, 366 Ill. App. 3d at 91-92, citing People v. Luczak, 306 Ill. App. 3d 319, 324-25, 714 N.E.2d 995 (1999) (other-crimes evidence relevant to show defendant's intent was to sexually assault the victim);

People v. Harris, 297 Ill. App. 3d 1073, 1086, 697 N.E.2d 850 (1998) (evidence admissible to establish lack of innocent intent where defendant claimed consent). We saw no reason why "propensity evidence could not be used to meet the defendant's consent defense" under section 115-7.3 of the Code. Boyd, 366 Ill. App. 3d at 93.

Moreover, although the trial court in this case found all three uncharged sexual assaults were relevant to establish defendant's propensity, the State limited the other-crimes evidence at trial to C.V.'s uncharged sexual assault. In addition, the State made only one passing reference to propensity evidence in each of its two final arguments. The State's decision to limit the amount of other-crimes evidence reduced the possible prejudicial effect of such evidence at defendant's trial. See People v. Cardamone, 381 Ill. App. 3d 462, 497-98, 885 N.E.2d 1159 (2008) (Although "perhaps a few instances of uncharged conduct" would have been relevant to show propensity under section 115-7.3, "the volume of the other-crimes evidence was overwhelming and undoubtedly more prejudicial than probative").

C.V.'s uncharged assault also bore a number of general factual similarities to T.W.'s assault allegations against defendant. At the same time, there are some distinct differences

1-07-0715

between the two assaults.

Other-crimes evidence must have " 'some threshold similarity to the crime charged' " to be admissible.  <u>Donoho</u>, 204 Ill. 2d at 184, quoting <u>People v. Bartall</u>, 98 Ill. 2d 294, 310, 456 N.E.2d 59 (1983).  As factual similarities increase, so does the relevance, or probative value, of the other-crimes evidence.  <u>Donoho</u>, 204 Ill. 2d at 184, citing <u>Bartall</u>, 98 Ill. 2d at 310.  Conversely, as the number of dissimilarities increase, so does the prejudicial effect of the other-crimes evidence.

The general similarities between T.W.'s assault and C.V.'s assault: (1) both victims were abducted while walking past alleys; (2) both victims were taken to an abandoned building before being assaulted; (3) the assailant used physical force and threatened to kill both victims if they did not comply with his demands; (4) defendant vaginally and orally penetrated both victims with his penis; and (5) both victims were adults when the assaults occurred--C.V. was 42 and T.W. was 33.

Although defendant contends the similarities between the assaults were insufficient because they are generic and common to many sexual crimes, our supreme court has held "where such evidence is not being offered under the <u>modus operandi</u> exception, 'mere general areas of similarity will suffice' to support admissibility."  <u>Donoho</u>, 98 Ill. 2d at 184, quoting <u>Illgen</u>, 145

-13-

1-07-0715

Ill. 2d at 372-73. The existence of some differences between the offenses does not defeat admissibility, however, "because no two independent crimes are identical." Donoho, 204 Ill. 2d at 185, citing Illgen, 145 Ill. 2d at 373.

One of the most telling differences between the two assaults was the number of perpetrators involved in each instance. C.V. testified she was sexually assaulted by defendant and an unidentified black male. T.W., on the other hand, testified defendant was the only attacker during her assault. C.V. testified defendant used a car during the assault, blew cocaine in her face and gave her alcohol during the assault, and anally penetrated her--three circumstances that differ from T.W.'s assault testimony. Neither victim testified at trial to seeing a weapon.

In Holmes, this court held the trial court properly excluded evidence regarding the defendant's 1996 conviction for attempted forcible rape because the details of that assault were not similar enough to the charged offense. Holmes, 383 Ill. App. 3d at 518-19. Unlike the charged assault, during the 1996 assault: there was a second person present when the victim was attacked; the victim went into the defendant's bedroom voluntarily and engaged in some level of intimacy; defendant did not threaten the victim with a weapon; the victim escaped from defendant; and

-14-

there was no actual penetration.  The court held the attacks did not share enough general similarities to make the 1996 conviction sufficiently probative to prove propensity under section 115-7.3. Holmes, 383 Ill. App. 3d at 518-19.

There is another problem with the propensity evidence here: the trial judge analyzed only the probative value of the other-crimes evidence during the pretrial hearing on the State's motion to admit.  The record reflects the trial court never considered the other side of the scale referred to in Bedoya--whether the risk of unfair prejudice substantially outweighed the probative value of the evidence.  See Bedoya, 325 Ill. App. 3d at 938.  Our supreme court has urged trial courts "to be cautious in considering the admissibility of other-crimes evidence to show propensity by engaging in a meaningful assessment."  Donoho, 204 Ill. 2d at 186.  Here, there was no assessment at all.

The existence of significant dissimilarities between the two assaults, combined with the trial court's failure to conduct any sort of "meaningful" analysis of the prejudicial effect of the other-crimes evidence, leads us to say the trial court erred in admitting the other-crimes evidence to establish defendant's propensity to commit sexual offenses.  See Donoho, 204 Ill. 2d at 186; Holmes, 383 Ill. App. 3d at 518-19.

1-07-0715

A trial court's failure to conduct a "meaningful assessment" may be considered harmless, however, if it is unlikely the error influenced the jury. Boyd, 366 Ill. App. 3d at 95, citing People v. Nieves, 193 Ill. 2d 513, 530, 739 N.E.2d 1277 (2000) (improper admission of other-crimes evidence is harmless error when a defendant is neither prejudiced nor denied the right to a fair trial). To determine whether the trial court's error was harmless in this case, we must first address defendant's contention that the DNA evidence linking him to T.W.'s alleged assault was improperly admitted at trial.

II. DNA Evidence

Defendant contends evidence regarding the male DNA profile prepared by Cellmark amounted to testimonial hearsay, in violation of defendant's constitutional right to confrontation, because none of the analysts who actually prepared the profile were presented for cross-examination. Defendant also contends the trial court erred in admitting the DNA evidence produced by Cellmark because a sufficient foundation was not established to demonstrate the equipment used was adequately calibrated and functioning properly.

At trial, Alissa Ginglesberger, a forensic scientist employed by Orchid Cellmark (Cellmark), testified as a DNA analysis expert regarding the procedures Cellmark used to analyze

the DNA on T.W.'s vaginal swabs. Ginglesberger testified Cellmark was an American Society of Crime Laboratory Directors' accredited laboratory, which requires a laboratory to "follow specific procedures and undergo specific training and proficiency testing to abide by their guidelines."

Ginglesberger admitted she did not examine or perform any physical testing of the samples herself; instead, she based her opinion on her review of the records of other Cellmark employees' testing of the vaginal swabs. Ginglesberger testified her role in this case was to serve as a "technical reviewer," which meant:

> "Once I receive the records and I receive all
> of the paper work generated from the work
> that was done in the case, I then did an
> independent technical review of the work to
> make sure all of the procedures were followed
> correctly and the correct conclusions were
> drawn. I also generated my own opinions and
> my own interpretations of the data that was
> present in the records and therefore I'm
> going to testify to the conclusions based on
> my review."

Defendant objected to Ginglesberger's testimony, arguing:

> "The objection is foundational with regard to

this witness. She's a reviewer, basically just reviewing the records of Cellmark. She did not personally perform analysis in this case. I object to the foundation and hearsay."

Overruling defendant's objection, the court found:

"She can testify to the tests as an expert in the field of DNA analysis. Ask her if those records are commonly used by people in the field. If she says yes she can testify and use the records, if necessary."

After Ginglesberger testified the records she reviewed were kept in the ordinary course of business by Cellmark, she was allowed to use the records while testifying. Defendant did not object to the remainder of Ginglesberger's testimony.

Ginglesberger testified Cellmark received T.W.'s blood standard and vaginal swabs from the Illinois State Police crime laboratory for analysis on May 21, 2002. The goal was to obtain a male DNA profile from the swabs. Cellmark obtained a sperm fraction from the swabs that generated a full male DNA profile at 13 locations. Cellmark used the polymerase chain reaction procedure, which Ginglesberger testified is commonly accepted in the scientific community to identify the DNA profile. After

generating a male DNA profile, Cellmark wrote a report based on its conclusions and interpretations of the data and sent the report back to the Illinois State Police for use in criminal litigation. Ginglesberger said approximately 10 Cellmark analysts were involved in the laboratory work in this case and that all of their methods, conclusions, and results were to a reasonable degree of scientific certainty.

Nicholas Richert, a forensic scientist employed by the Illinois State Police, testified he received the results of Cellmark's analysis of T.W.'s vaginal swabs. Richert said the male DNA profile Cellmark generated from the swabs was entered into the DNA database in May 2002. In June 2004, Richert received information from the database that the male DNA profile from T.W.'s vaginal swab matched defendant's DNA profile. Richert admitted a DNA match does not indicate whether consensual or nonconsensual contact occurred. Defendant did not object to Richert's testimony.

After defendant was arrested, he consented to the collection of a bucal swab to obtain his DNA profile. Brian Schoon, a forensic scientist employed by the Illinois State Police, testified he obtained a full DNA profile from defendant's buccal swab. He compared defendant's DNA profile obtained from the buccal swab to the male profile generated by Cellmark from T.W.'s

vaginal swabs.  Schoon concluded, to a reasonable degree of medical certainty, that the DNA profiles matched.  Schoon conducted a statistical analysis of the DNA match and concluded the DNA profile was likely to occur in approximately 1 in 710 quadrillion black, 1 in 550 quadrillion white, and 1 in 430 quadrillion Hispanic unrelated individuals.  Defendant did not object to Schoon's testimony.

A. Forfeiture

The State contends defendant forfeited any right to challenge the DNA evidence on sixth amendment confrontation or lack of foundation grounds by failing to properly object at trial or raise the issues in his posttrial motion.

In order to properly preserve any alleged error for appellate review, "a defendant must both specifically object at trial and raise the issue again in a posttrial motion."  People v. Woods, 214 Ill. 2d 455, 470, 828 N.E.2d 247 (2005); People v. Enoch, 122 Ill. 2d 176, 186, 522 N.E.2d 1124 (1988).

Defendant raised a general hearsay and foundation objection to Ginglesberger's testimony regarding the Cellmark DNA profile at trial and in his amended posttrial motion.  However, the objections raised below were clearly based on theories different than those defendant presents here.  Defendant never challenged the admission of Ginglesberger's testimony as a confrontation

clause violation in the trial court; nor did he make a foundation objection to the Cellmark DNA profile on the ground that there was no proof the equipment used to generate the profile was adequately calibrated and functioning properly. He raises those issues for the first time on appeal.

Defendant forfeited the confrontation and lack of foundation issues raised here. See People v. Woods, 214 Ill. 2d 455, 470, 828 N.E.2d 247 (2005) ("This rule is particularly appropriate when a defendant argues that the State failed to lay the proper technical foundation for the admission of evidence, and a defendant's lack of a timely and specific objection deprives the State of the opportunity to correct any deficiency in the foundational proof at the trial level"); People v. Eastling, 386 Ill. App. 3d 884, 887-88, 897 N.E.2d 340, 344 (2008) (defendant waived confrontation clause challenge by failing to object at trial or raise the issue in his posttrial motion).

Defendant contends the issues should be reviewed for plain error. The plain-error doctrine allows a reviewing court to reach a forfeited error when either (1) the evidence in the case is closely balanced, regardless of the seriousness of the error, or (2) the error is so serious that the defendant was denied a substantial right, regardless of the closeness of the evidence. People v. Herron, 215 Ill. 2d 167, 178-79, 830 N.E.2d 467 (2005).

1-07-0715

The first step in conducting a plain-error analysis is to determine whether an error occurred at all. People v. Hudson, 228 Ill. 2d 181, 191, 886 N.E.2d 964 (2008).

B. Foundation

In Wilson v. Clark, 84 Ill. 2d 186, 417 N.E.2d 1322 (1981), our supreme court adopted the then-existing Federal Rule of Evidence 703, holding that an expert may offer an opinion based upon facts not in evidence if those facts are "of a type reasonably relied upon by experts in the particular field." People v. Raney, 324 Ill. App. 3d 703, 706, 756 N.E.2d 338 (2001), citing Wilson, 84 Ill. 2d at 193. Where expert testimony is based upon an electronic or mechanical device, however, the expert must provide some foundational proof that the device is functioning properly at the time it was used. Raney, 324 Ill. App. 3d at 706 (proper foundation was lacking where expert failed to provide any testimony that the machine used was calibrated and working properly or how she knew the results were accurate). Raney recognized, however, that it may not be feasible to require an expert to personally test the instrument relied on for making relevant determinations. Raney, 324 Ill. App. 3d at 710.

Recently, in People v. Williams, 238 Ill. 2d 125 (2010), the Illinois Supreme Court held that despite the DNA analyst's inability to testify to the precise conditions of the equipment

-22-

and testing used to analyze the DNA samples, the analyst provided a sufficient foundation for her testimony. The analyst "did not merely regurgitate results generated by a machine, as the witness in Raney did. [The analyst] conducted an independent evaluation of data related to samples of genetic material, including items processed at both Cellmark and the ISP Crime Lab." Williams, 238 Ill. 2d at 140. The supreme court further distinguished Raney because the analyst repeatedly testified that Cellmark, the testing facility, was an accredited laboratory required to follow specified guidelines in order to perform DNA analysis. The State laid a proper foundation to show that the analyst also testified that Cellmark's testing and analysis methods were generally accepted in the scientific community. The analyst was qualified, without objection, as an expert in forensic DNA analysis. Although she admitted she had not performed the actual tests on the evidence, the analyst used her own expertise to determine that, upon examination, the blood and semen samples indicated a DNA match with the defendant. Williams, 238 Ill. 2d at 140.

The supreme court further noted that it was the defendant's burden to "elicit facts underlying the expert opinion." Williams, 238 Ill. 2d at 140, citing Wilson, 84 Ill. 2d at 194. The record demonstrated "substantial cross-examination" of the analyst's opinion regarding the genetic match between the DNA

1-07-0715

samples. The supreme court ultimately concluded that "the issue of [the analyst's] reliance on Cellmark's report went to the weight of her opinion and not its admissibility." Williams, 238 Ill. 2d at 140-41.

The foundational grounds presented in this case are stronger than the grounds presented in Williams.

Ginglesberger--an employee of the laboratory that generated the DNA profile--was qualified as an expert in DNA analysis, without objection. She specifically testified Cellmark was an American Society of Crime Laboratory Directors' accredited laboratory, which required the laboratory to "follow specific procedures and undergo specific training and proficiency testing." Ginglesberger explained Cellmark used the polymerase chain reaction procedure, which is commonly accepted in the scientific community, to identify the DNA profile. Although Ginglesberger admitted she did not perform any physical testing herself, she said she conducted an "independent technical review of the work to make sure all of the procedures were followed correctly and the correct conclusions were drawn."

Based on this court's holding in Williams, Ginglesberger provided a sufficient foundation upon which to partially base her assessment and conclusion. There is no foundational error to review in this case.

C. Confrontation Clause

The sixth amendment's confrontation clause provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right *** to be confronted with the witnesses against him."  U.S. Const., amend. VI.  In Crawford v. Washington, 541 U.S. 36, 68, 158 L. Ed. 2d 177, 203, 124 S. Ct. 1354, 1374 (2004), the Supreme Court held the confrontation clause bars the admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had a prior opportunity for cross-examination.  The Court declined to specifically define what constitutes a "testimonial" statement.  The Court did say, however, "the [confrontation] clause also does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted."  Crawford, 541 U.S. at 59 n.9, 158 L. Ed. 2d at 191 n.9, 124 S. Ct. at 1369 n.9.

In Williams, the supreme court considered whether a DNA analyst's expert testimony, which referred to a report of the results of a laboratory's DNA testing and analysis, violated the defendant's constitutional right to confrontation where no representative of Cellmark, the testing laboratory that generated the report, was presented for cross-examination regarding the report.  The court held determination of the issue depended, in part, on whether the report was testimonial in nature.  Williams,

1-07-0715

238 Ill. 2d at 141.

The supreme court recognized that although the rule against hearsay generally prohibits the introduction of an out-of-court statement offered to prove the truth of the matter asserted, "[u]nderlying facts and data, however, may be disclosed by an expert, not for the truth of the matter asserted, but for the purpose of explaining the basis for his opinion." Williams, 238 Ill. 2d at 143, citing People v. Lovejoy, 235 Ill. 2d 97, 143, 919 N.E.2d 843 (2009). Moreover, the court noted "it is well established that an expert may testify about the findings and conclusions of a nontestifying expert that he used in forming his opinions."[2] Williams, 238 Ill. 2d at 143, citing Lovejoy, 235 Ill. 2d at 143.

---

[2]This "well established" principle is based on our supreme court's adoption of Federal Rule of Evidence 703 in Wilson, 84 Ill. 2d at 192-93. We note Federal Rule 703 was amended in 2000, however, to provide "[f]acts or data that are otherwise inadmissible shall not be disclosed to the jury by the proponent of the opinion or inference unless the court determines that their probative value in assisting the jury to evaluate the expert's opinion substantially outweighs their prejudicial effect." Fed. R. Evid. 703 (amended 2000). The advisory committee notes reflect the 2000 amendment "provides a presumption against disclosure to the jury of information used as the basis of an expert's opinion and not admissible for any substantive purpose, when the information is offered by the proponent of the expert." Fed. R. Evid. 703, Advisory Committee's Note. The amended version of Federal Rule 703 has not been adopted in Illinois.

The Illinois Supreme Court held the Cellmark report was not offered for the truth of the matter asserted. "The State introduced this testimony, rather, to show the underlying facts and data [the analyst] used before rendering an expert opinion in this case." Williams, 238 Ill. 2d at 145. The court noted the analyst "testified to her conclusion based upon her own subjective judgment about the comparison of the Cellmark report with the existing ISP profile." Williams, 238 Ill. 2d at 145. Moreover, the supreme court emphasized the Cellmark report was not admitted into evidence at all. The court further distinguished the case from the U.S. Supreme Court opinion in Melendez-Diaz v. Massachusetts, 557 U.S. __, 174 L. Ed. 2d 314, 129 S. Ct. 2527 (2009) because the analyst's opinion was based on her own statistical analysis and not just a "bare bones" regurgitation of Cellmark's report. Williams, 238 Ill. 2d at 149. Because the report was not offered to prove the truth of Cellmark's findings, the supreme court concluded the Confrontation Clause was not violated. Williams, 238 Ill. 2d at 149.

Here, as in Williams, the report was not offered to prove the truth of Cellmark's findings; instead, Ginglesberger testified regarding the report to provide a basis for her own opinion.

Moreover, Ginglesberger--unlike the DNA expert in <u>Williams</u>-- was an actual Cellmark representative, subject to cross- examination by defense counsel. Accepting defendant's contentions as true in this case would require each and every individual involved in the testing and analysis of DNA to testify at trial.

Because the report was not offered to prove the truth of Cellmark's findings, the confrontation clause was not violated. See <u>Williams</u>, 238 Ill. 2d at 149. There is no <u>Crawford</u> error to review here.

III. Harmless Error

We now turn to the issue of whether the trial court's improper admission of the other-crimes evidence in this case amounted to harmless error. "[I]mproper introduction of other- crimes evidence is harmless error when a defendant is neither prejudiced nor denied a fair trial based upon its admission." <u>Nieves</u>, 193 Ill. 2d at 530.

Here, T.W.'s testimony at trial that defendant grabbed her while walking past an alley, dragged her into the corridor of an abandoned building, and sexually assaulted her was not attacked or challenged, except in statements by defense counsel. T.W.'s identification of defendant as her attacker in a lineup and in court went unchallenged. After T.W. flagged down a police

officer and reported the rape, she was taken to an emergency room for treatment. Dr. Joseph Knight testified that when he interviewed and examined T.W. in the emergency room, she told him that she had been sexually assaulted orally and vaginally in a vacant building. Dr. Knight noted a thin white discharge around T.W.'s vagina during a pelvic exam. He administered a sexual assault evidence collection kit, which obtained miscellaneous debris, oral swabs, vaginal swabs, pubic hair combings, head hair combings, and a blood standard from T.W. The scientific evidence collected from T.W.'s vaginal swabs after the assault provided a male DNA profile that matched defendant's DNA profile. Based on T.W.'s testimony, combined with the medical evidence, a rational trier of fact easily could have found the sexual intercourse took place by force and against T.W.'s will. See People v. Le, 346 Ill. App. 3d 41, 50-51, 803 N.E.2d 552 (2004), citing People v. Morrow, 104 Ill. App. 3d 995, 433 N.E.2d 985 (1982) (unequivocal testimony of complainants was sufficient to sustain conviction in rape prosecution, even without physical evidence to corroborate their assertion with respect to the defendant's use of force).

Given the strength of the evidence presented against defendant, mixed with the fact that the State did not put undue emphasis on the other-crimes evidence during its opening or closing arguments, we cannot say the outcome of his trial would

1-07-0715

have been different had C.V.'s testimony regarding defendant's involvement in her assault been excluded.  See <u>People v. Gonzalez</u>, 379 Ill. App. 3d 941, 952, 884 N.E.2d 228 (2008).  The error in admitting C.V.'s testimony to establish defendant's propensity to commit sexual assault was harmless.  See <u>Nieves</u>, 193 Ill. 2d at 530-31; <u>Gonzalez</u>, 379 Ill. App. 3d at 952.

CONCLUSION

We affirm defendant's conviction and sentences.

Affirmed.

HALL, P.J., and R. GORDON, J., concur.

-30-

REPORTER OF DECISIONS - ILLINOIS APPELLATE COURT

THE PEOPLE OF THE STATE OF ILLINOIS,

Plaintiff-Appellee,

v.

LORELL JOHNSON,

Defendant-Appellant.

No. 1-07-0715

Appellate Court of Illinois
First District, FIRST DIVISION

December 20, 2010

Justice Bertina E. Lampkin authored the opinion of the court:

Presiding Justice Hall and Justice R. Gordon concur.

Appeal from the Circuit Court of Cook County.
The Hon. Stanley J. Sacks, Judge Presiding.

**COUNSEL FOR APPELLANT**
Michael J. Pelletier, State Appellate Defender, Chicago, IL 60601
Patricia Unsinn, Deputy Defender
OF COUNSEL: Brian E. Koch

**COUNSEL FOR APPELLEE**
Anita Alvarez, Cook County State's Attorney, Chicago, IL 60602
OF COUNSEL: James E. Fitzgerald, Alan J. Spellberg
and Amy Watroba Kern