2021 IL App (1st) 200762-U

No. 1-20-0762

Order filed June 24, 2021

Fourth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 13 CR 16589 |
| | ) | |
| MELVIN HOSKINS, | ) | Honorable |
| | ) | Ursula Walowski, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE LAMPKIN delivered the judgment of the court.
Justices Reyes and Martin concurred in the judgment.

**ORDER**

¶ 1   *Held*:   Circuit court's first-stage dismissal of defendant's *pro se* postconviction petition is affirmed where his petition did not raise the gist of a claim that counsel on direct appeal was ineffective.

¶ 2   Defendant Melvin Hoskins appeals from the summary dismissal of his *pro se* petition for

relief under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West Supp. 2019)).

On appeal, defendant contends that he raised the gist of a constitutional claim that counsel on direct

appeal was ineffective for failing to challenge the admissibility of other-crimes testimony. We affirm.[1]

¶ 3     Following a jury trial, defendant was found guilty of first degree murder for the death of Edward Jackson (720 ILCS 5/9-1(a)(1), (2) (West 2010)), with the additional finding that he personally discharged a firearm and proximately caused another's death. The court sentenced defendant to 75 years' imprisonment, which included a 25-year firearm enhancement. Gregory Williams was also convicted of first degree murder for Edward's death following a simultaneous trial before a separate jury.[2]

¶ 4     Prior to trial, the State filed a motion *in limine* to admit other-crimes evidence, specifically, the testimony of Edward's cousin, Ivan Miller, about an encounter Ivan had with defendant and Gregory two days before Edward's killing. The State alleged that Ivan was near where Edward was later shot when a woman told him that defendant, Gregory, and Gregory's brother, who were nearby, did not want him in the area. Ivan proceeded to a restaurant, where defendant, Gregory, and Gregory's brother confronted him. When Ivan left the restaurant, defendant, Gregory, and Gregory's brother approached him again. Gregory brandished a .40-caliber firearm, the kind used to shoot Edward, and stated he would shoot Ivan if Ivan were armed.

¶ 5     The State argued, *inter alia*, that this evidence presented defendant and Gregory's motive and a continuing narrative of the circumstances of the offense, and showed defendant and Gregory had access to a .40-caliber firearm. The court granted the motion because of the "compelling"

_____

[1] In adherence with the requirements of Illinois Supreme Court Rule 352(a) (eff. July 1, 2018), this appeal has been resolved without oral argument upon the entry of a separate written order.

[2] Because multiple individuals involved in the case share the same surnames, we refer to several of them by their first names. Gregory Williams is not a party to this appeal.

factual similarities, where the encounter occurred two days before the shooting and in the same area, Gregory and defendant were both present, they followed Ivan twice, and the firearms were the same caliber. The court further found that the evidence's prejudicial effect did not substantially outweigh its probative value.

¶ 6    At trial, the court instructed the jury that it could only consider Ivan's testimony for the limited purpose of identification, presence, intent, motive, design, and knowledge.

¶ 7    Ivan testified that he was Edward's cousin and had a prior conviction for possession of a controlled substance. A few days before Edward's death, around 11 p.m., Ivan encountered defendant, Gregory, and Gregory's brother, Jay, in a restaurant near Division Street and Waller Avenue. Ivan and Jay argued, and Gregory told Ivan to watch how he spoke to Jay. As Ivan and his girlfriend walked home from the restaurant, Gregory confronted Ivan, drew a .40-caliber firearm, and stated, "I will shoot you if you had your gun on you." Ivan did not recall seeing defendant when Gregory confronted him after Ivan left the restaurant. On cross-examination, Ivan testified that defendant did not speak to him in the restaurant.

¶ 8    Charte Christian testified that, at approximately 5:15 a.m. on June 19, 2011, she was near the corner of Parkside Avenue and Potomac Avenue with Chante Williams,[3] Princess Christian, defendant, Gregory, and others. She had been drinking alcohol the night prior but its effects had worn off. Edward approached, and Charte heard Gregory tell Edward, "I'm going to kill your cousin." Edward walked away two or three minutes later, towards Waller, and shortly thereafter, Charte heard four or five gunshots. At 2 or 3 p.m. that day, Charte asked defendant "why did he

---

[3] Chante's first name is spelled various ways in the record. We adopt the spelling from her testimony.

do it," and defendant replied it was because "they couldn't get Ivan," Edward's cousin. On cross-examination, Charte testified that she stopped drinking between 2 or 3 a.m., and first spoke to the police in December 2011.

¶ 9    Chante testified that she had a felony conviction involving cannabis, was in court under subpoena, and did not want to testify. She stopped drinking around 1:30 or 2 a.m. on June 19, 2011, and Edward approached the group on the corner around 5 a.m. Chante heard Gregory angrily tell Edward "that he didn't care about his cousin that he had killed him." Edward walked away after two or three minutes. Chante then saw Gregory hand defendant a firearm. Defendant walked between houses, out of Chante's sight. Chante then saw him about 30 seconds later, near the corner of Potomac and Waller. Defendant approached Edward from behind and shot him from about one vehicle's length away. Defendant then stood over Edward and continued to shoot him. Defendant fired three or four times.

¶ 10    Chante did not call the police because she was scared, but the police contacted her on June 21, 2011. About a week later, she went to the police station and identified a photograph of defendant but did not sign it to avoid involvement in the case. Chante was visited by defendant's representatives and gave a different account of the shooting in December 2014, and signed a prepared statement in March 2015. However, she testified that the statement was untrue.

¶ 11    On cross-examination, Chante testified that the statement was prepared by an investigator for the public defender's office and indicated that she did not see the shooting. On redirect examination, Chante maintained that she was testifying truthfully and that defendant shot Edward.

¶ 12    Princess testified that everyone was "drinking and hanging out," on the corner, but she did not drink. She observed Gregory attempt to speak to Edward in a "[h]ostile" manner on the corner

of Potomac and Parkside for about 15 minutes. Gregory then walked behind a van on the opposite side of the street from Edward. From the side of the van, Princess saw Gregory and defendant speak, and Gregory handed defendant a firearm. Defendant put the firearm under his jacket and followed Edward towards Waller. From behind defendant, she saw him reach towards the place he put the firearm. Princess turned to alert Charte, heard gunshots, looked back, and saw Edward on his knees and defendant running with the firearm. On cross-examination, Princess testified that she first spoke to the police in December 2011, and told them that Gregory handed defendant a firearm.

¶ 13    Damien Williams testified that, at the time of trial, he was imprisoned for aggravated unlawful use of a weapon and had a prior conviction for possession of a controlled substance. Damien was on the street around 5:30 a.m., saw Edward, and heard Edward speaking about a cousin. Damien walked home, and two or three minutes later heard gunshots.

¶ 14    On cross-examination, Damien testified that he did not recall Edward and Gregory conversing, and stated Edward was speaking to the crowd. Damien denied seeing any hostility. Chante, Charte, and Princess were drinking.

¶ 15    On redirect examination, Damien testified that he was visited by Chicago police detectives Jose Cardo and Jack Gonzalez, but denied telling the detectives that Edward spoke to Gregory about Edward's cousin, things became "tense," and Damien left to avoid involvement. The State entered a stipulation that Gonzalez would testify that he interviewed Damien, who stated that Edward and Gregory had a tense conversation about Edward's cousin and Damien left to avoid involvement.

¶ 16    Chicago police officer Gathings[4] testified that he responded to the shooting and discovered a man lying on the ground on the corner of Potomac and Waller. The man was still alive, and emergency crews took him away.

¶ 17    Chicago police forensic investigator Kathleen Gahagan testified that she processed Edward's body at the hospital, then photographed and videotaped the scene of the shooting, where eight .40-caliber cartridge casings were recovered.

¶ 18    The State entered a stipulation that Illinois State Police firearms examiner Gina Giglio would testify that she examined a fired bullet jacket fragment, a lead fragment, a fired bullet fragment, and eight .40-caliber fired casings. The fired bullet jacket fragment and fired bullet fragment were .40-caliber, and the cartridge casings were all fired from the same firearm.

¶ 19    Dr. Timothy Fagan, an assistant medical examiner, testified that he reviewed Edward's autopsy report and concluded Edward died from two gunshot wounds to his chest and leg.

¶ 20    The defense entered stipulations that Cardo would testify that he interviewed Charte in December 2011 and she did not state that she saw Gregory hand defendant a firearm, and that Gonzalez would testify he arrested defendant in August 2013.

¶ 21    In closing argument, the State argued, *inter alia,* that the encounter with Ivan motivated Gregory and defendant to kill Edward. In rebuttal, the State briefly argued again that they wanted to kill Ivan, and that defendant was "always with [Gregory] when something is going down." Before the jury deliberated, the court again instructed the jury that it could only consider the other-

---

[4] Officer Gathings's first name is not in the report of proceedings.

crimes evidence for the purposes of identification, presence, intent, motive, design, and knowledge.

¶ 22    Following arguments, the jury found defendant guilty of first degree murder with the additional finding that he personally discharged a firearm proximately causing another's death. Defendant's motion for acquittal or a new trial was denied. Following a hearing, the court sentenced defendant to 75 years' imprisonment, which included a 25-year firearm enhancement. Defendant's motion to reconsider sentence was denied.

¶ 23    On direct appeal, defendant argued that his sentence was excessive and we affirmed. See *People v. Hoskins*, 2019 IL App (1st) 160126-U.

¶ 24    On September 23, 2019, defendant filed a *pro se* postconviction petition which alleged that counsel on direct appeal was ineffective for, *inter alia*, not challenging the admission of Ivan's other-crimes testimony in defendant's case because it only related to Gregory's motive to kill Edward, not defendant's motive.

¶ 25    On November 15, 2019, the circuit court summarily dismissed defendant's petition. The court entered a written order explaining that defendant's petition was frivolous or patently without merit because it was conclusory and he failed to provide evidentiary support for his allegations. This court allowed defendant's late notice of appeal.

¶ 26    On appeal, defendant argues that his petition alleged the gist of a constitutional claim that counsel on direct appeal was ineffective for failing to challenge Ivan's other-crimes testimony. Defendant contends that, while Ivan's testimony may have established that Gregory had motive to kill Edward, it did not establish defendant's motive where defendant was not involved in Gregory's and Edward's confrontation and Ivan did not recall seeing defendant when Gregory threatened to

shoot Ivan. Defendant further asserts that, since the issue was fully preserved, the State would have had to prove on direct appeal that the error was harmless beyond reasonable doubt, and it is arguable that the State would not have met that burden.

¶ 27    The State responds that defendant's claim is barred by *res judicata* and collateral estoppel where, in Gregory's separate direct appeal, we rejected Gregory's argument that the court abused its discretion by admitting Ivan's testimony. See *People v. Williams*, 2019 IL App (1st) 161700-U, ¶¶ 39-48; see also Ill. S. Ct. R. 23(e)(1) (eff. Jan. 1, 2021) (nonprecedential orders may be considered to support contentions of *res judicata* or collateral estoppel).

¶ 28    The Act provides a procedure through which a defendant may assert a substantial denial of his constitutional rights at trial. 725 ILCS 5/122-1 *et seq.* (West Supp. 2019); *People v. Edwards*, 2012 IL 111711, ¶ 21. At the first stage of proceedings under the Act, the circuit court independently reviews the defendant's petition, takes its allegations as true, and determines whether the petition is frivolous or patently without merit. *People v. Hodges*, 234 Ill. 2d 1, 10 (2009). A petition is frivolous or patently without merit if it has no arguable basis in law or fact. *Id.* at 11-12. In turn, a petition has no arguable basis in law or fact if it is based on "an indisputably meritless legal theory," such as one "completely contradicted by the record," or a "fanciful factual allegation," such as one that is "fantastic or delusional." *Id.* at 16-17. Summary dismissals at the first stage of proceedings are reviewed *de novo*. *Id.* at 8-9.

¶ 29    Criminal defendants are guaranteed the right to effective assistance of counsel. U.S. Const., amend. VI, XIV; Ill. Const. 1970, art. I, §§ 2, 8. To establish that counsel was ineffective, a defendant must demonstrate "both that counsel's performance was deficient and that the deficient performance prejudiced the defendant." *People v. Cherry*, 2016 IL 118728, ¶ 24 (citing *Strickland*

*v. Washington*, 466 U.S. 668, 687 (1984)). The prejudice prong requires a showing that "there is a 'reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' " *Id.* (quoting *Strickland*, 466 U.S. at 694). Failure to satisfy either prong precludes a finding of ineffective assistance. *Id.*

¶ 30    Claims that appellate counsel was ineffective are subject to the same standard. *People v. Makiel*, 358 Ill. App. 3d 102, 105 (2005). Counsel need not raise every conceivable argument on appeal, and substantial deference is afforded to appellate counsel's decision whether to pursue certain issues on direct appeal. *People v. Mack*, 167 Ill. 2d 525, 532-33 (1995). A defendant must show that the failure to raise an issue was objectively unreasonable and prejudicial. *People v. Diehl*, 335 Ill. App. 3d 693, 701 (2002). If the underlying issue is not meritorious, the defendant cannot have been prejudiced by counsel's failure to raise it on appeal. *People v. Edwards*, 195 Ill. 2d 142, 164 (2001). At the first stage of postconviction proceedings, a petition alleging ineffective assistance will advance if it is arguable that (1) counsel's performance fell below an objective standard of reasonableness, and (2) the defendant was prejudiced. *Hodges*, 234 Ill. 2d at 17.

¶ 31    First, we reject the State's argument that defendant's claim is barred by *res judicata* or collateral estoppel based on our decision in Gregory's appeal. Both doctrines require the party being estopped to have been a party or in privity with a party in a prior proceeding. See *In re J.D.*, 2018 IL App (1st) 180580, ¶¶ 28-29, 45. The State asserts that defendant and Gregory were in privity because "they had identical interests in opposing the admission of Ivan's testimony." See *Atherton v. Connecticut General Life Insurance Co.*, 2011 IL App (1st) 090727, ¶ 12 ("Privity is said to exist between parties who adequately represent the same legal interests." (internal quotation marks omitted)). However, defendant was not a party to Gregory's appeal, and their

interests are not identical where Gregory challenged his own conviction following a separate jury trial, and defendant now asserts that he received ineffective assistance of counsel on his separate, direct appeal. See *id.* ("Privity expresses the idea that as to certain matters and in certain circumstances persons who are not parties to an action but who are connected with it in their interests are affected by the judgment with reference to interests involved in the action, as if they were parties." (internal quotation marks omitted)).

¶ 32    Turning to the merits, we find that defendant has not made an arguable claim that he was prejudiced by counsel's failure to challenge Ivan's other-crimes testimony on direct appeal because the trial court did not abuse its discretion in allowing that evidence.

¶ 33    If relevant, *i.e.*, tending to make the existence of any consequential fact more or less probable, evidence of other crimes is admissible for purposes other than to show the defendant's propensity to commit criminal acts, such as *modus operandi*, intent, identity, motive, or absence of mistake. *People v. Illgen*, 145 Ill. 2d 353, 364-66 (1991). The trial court must weigh the evidence's probative value against its prejudicial effect. *Id.* at 365. On appeal, a trial court's ruling on the admission of other crimes is reviewed for an abuse of discretion. *People v. Ward*, 2011 IL 108690, ¶ 21. "An abuse of discretion occurs only where the trial court's decision is arbitrary, fanciful, or unreasonable to the degree that no reasonable person would agree with it." (Internal quotation marks omitted.) *People v. King*, 2020 IL 123926, ¶ 35.

¶ 34    In this case, defendant's ineffective assistance of appellate counsel claim fails because the trial court did not abuse its discretion in admitting the other-crimes evidence. Ivan testified that defendant, Gregory, and Jay approached him in a restaurant, Jay and Gregory argued with him, and after he left, he encountered Gregory, who drew a firearm and stated that he would shoot Ivan

if Ivan were armed. A few days later, witnesses observed a confrontation between Gregory and Edward. Gregory then spoke with defendant and handed him a firearm; soon after, defendant shot and killed Edward. Later, when Charte asked defendant, "why did he do it," defendant explained it was because "they couldn't get Ivan."

¶ 35    The encounter with Ivan occurred shortly before Edward's shooting and in the same area, defendant and Gregory were present in both instances, and the firearms in both instances were the same caliber. While Ivan testified that defendant did not speak to Ivan at the restaurant and Ivan did not recall seeing defendant when Gregory threatened to shoot him, defendant was present during Gregory's confrontation with Ivan in the restaurant, and a few days later, received a .40-caliber firearm from Gregory and shot Edward after Gregory discussed killing Edward's cousin. Contrary to defendant's contentions, Ivan's testimony was therefore probative of defendant's motive in shooting Edward and allowed the jury to understand the complete circumstances of Edward's death. See *People v. Ware*, 2019 IL App (1st) 160989, ¶ 40 (other-crimes evidence admissible if it explains narrative of events and circumstances of crime).

¶ 36    Moreover, any error in admitting Ivan's testimony would be harmless where there was overwhelming evidence that defendant shot Edward, and did so with the intent to kill him. See *People v. Johnson*, 406 Ill. App. 3d 805, 818 (2010) (improperly admitted other-crimes evidence is harmless where its admission does not prejudice defendant nor deny defendant a fair trial). A person commits first degree murder if, without lawful justification, he performs an act which causes death and either intends to kill or do great bodily harm or knows the act will cause death, or knows the act will create a strong probability of death or great bodily harm. 720 ILCS 5/9-1(a)(1), (2) (West 2010). Here, Chante saw defendant shoot Edward from behind, then stand

over him and shoot him further. Princess saw defendant reach for a firearm, turned and heard gunshots, then saw Ivan falling while defendant ran with a firearm. Last, defendant told Charte he did it because they could not get Ivan. See *People v. Carlisle*, 2015 IL App (1st) 131144, ¶ 59 (defendant's intent to kill or cause great bodily harm may be inferred from surrounding circumstances such as character of attack, use of deadly weapon, or nature and extent of injuries inflicted); see also *People v. Petermon*, 2014 IL App (1st) 113536, ¶ 39 ("This court has previously found that '[t]he very fact of firing a gun at a person supports the conclusion' " that shooter acted with intent to kill (quoting *People v. Ephraim*, 323 Ill. App. 3d 1097, 1110 (2001)).

¶ 37    Further, the State did not put undue emphasis on the other-crimes evidence during closing arguments, and the court issued two limiting instructions regarding the evidence. See *Johnson*, 406 Ill. App. 3d at 808, 810, 819 (finding harmless error where there was strong evidence against defendant, State made two "passing reference[s]" to other-crimes evidence in arguments, and court issued limiting instruction). Indeed, out of approximately 18 pages of transcript from the State's closing argument and rebuttal, just 3 paragraphs addressed the motive evidence. The limited references to the motive evidence diminished its possible prejudicial effect. See *People v. Walker*, 2012 IL App (1st) 083655, ¶ 55. In any event, the State was not required to establish defendant's motive in order to prove his guilt beyond a reasonable doubt. *People v. Smith*, 141 Ill. 2d 40, 56 (1990) (motive is not an essential element of murder). It is therefore clear beyond a reasonable doubt that the jury still would have found defendant guilty absent Ivan's testimony.

¶ 38    Consequently, defendant has not shown the trial court abused its discretion by allowing the other-crimes evidence, and any error that may have occurred was harmless. Therefore, defendant cannot show that he was prejudiced by counsel's failure to raise the issue on direct appeal.

As such, his petition does not state an arguable claim of ineffective assistance of counsel and the circuit did not err in dismissing it. *Hodges*, 234 Ill. 2d at 17.

¶ 39    For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

¶ 40    Affirmed.